(No. 22073.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY ALWARD, Plaintiff in Error.

*Opinion filed December 22, 1933.*

J. J. BAKER, ROBERT I. PUGH, and PHILIP L. TURNER, for plaintiff in error.

OTTO KERNER, Attorney General, KENNETH F. KELLY, State's Attorney, J. J. NEIGER, and T. J. SULLIVAN, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error and one Lizzie Dazey were jointly indicted in the circuit court of Shelby county for arson, the specifications being that they willfully and maliciously burned or caused to be burned a certain dwelling house in the village of Findlay, the property of Lizzie Dazey, one

of the accused. Plaintiff in error was awarded a separate trial and on trial was found guilty.

The house which was burned was a ten-room two-story frame house with a shingle roof, identified in the record as the Dole house. For some months prior to the fire plaintiff in error occupied a double room on the ground floor on the west side of this house. The rest of the house was unoccupied. Plaintiff in error heated the portion of the house used by him by means of a small stove. The house was old, and the evidence showed that mortar had fallen from between the bricks in the chimney above the roof so that openings through it appeared. Shortly prior to the fire the house had been rented to one Earl Fleetwood, and on the afternoon of November 23, 1931, the day when the fire occurred, one George Barbee, a painter, was engaged in painting the kitchen. On that evening a number of residents of Findlay met with plaintiff in error in his rooms and spent the evening playing cards. Among them was one of the witnesses, Ervin Spicer. Spicer replenished the fire in the stove with cobs several times during the evening. The card game broke up about 10:30. Between 11:30 and 12:00 o'clock the house was discovered to be on fire. The fire was first seen coming from the top or ridge of the roof, near the chimney.

The People called one C. E. Coventry, an insurance agent, and over the objection of plaintiff in error he was permitted to testify that policies of insurance had been issued to Lizzie Dazey, the owner, in the amount of $7000 on the house and $500 on its contents. At the close of his testimony in chief the plaintiff in error moved to exclude it, for the reason that there was no evidence that plaintiff in error had any knowledge of the existence of insurance on the property. This motion was denied. On cross-examination this witness testified that he delivered the policies to Lizzie Dazey, and that he had no occasion to and did not confer with or inform plaintiff in error of the

policies, and so far as he knew plaintiff in error had no information about them. The motion to exclude was renewed and again denied.

Ervin Spicer, who the evidence showed was under sentence to the Southern Illinois Penitentiary for grand larceny and was brought from that institution as a witness, testified that on the afternoon of November 23, 1931, he went with plaintiff in error to the attic of the Dole house and saw plaintiff in error pour coal oil on three piles of shingles—one in the northwest corner, one in the northeast corner and one in the southwest corner of the attic—and that he could see the oil on the shingles. He also testified that he attended the card game hereinbefore mentioned, and after all the other guests had left, plaintiff in error told him he was going to burn the house that night and started up the stairway, but at witness' suggestion returned and got some matches and again went up the stairway, and that the witness then went home and shortly after discovered the house was on fire. He also testified that plaintiff in error thereafter told him that they would probably be picked up for investigation, but not to be scared about the matter, because they had nothing on them. He also testified that he went to Iowa and was visited there by plaintiff in error and traveled with him in Arkansas, Louisiana and Missouri; that he had at various times received money from plaintiff in error; that following the fire he was questioned by the fire marshal, and that he told him he knew nothing about how the Dole house caught on fire. He explained the difference between that statement and his testimony by saying that he was not sworn at the time he was talking to the fire marshal.

One Icil Reedy, who the evidence showed had served several jail sentences in Sullivan and Shelbyville, testified that on or about January 5, 1932, he had a conversation with plaintiff in error and told him that the fire marshal had been to see him, and that plaintiff in error told him

to stay out of the fire marshal's way and just forget "that Harry burned it."

Evidence concerning the value of this property and appraisal made of the value of it was introduced over the objection of plaintiff in error, the purpose apparently being to show that the property was not worth the amount. for which it was insured. As there was no showing that plaintiff in error had any knowledge of the existence of insurance on the house and no ground was laid for the introduction of the testimony concerning the issuance of insurance policies or the evidence of the value of the property, all such evidence was incompetent and highly prejudicial.

On behalf of the defendant it was shown by Barbee, the painter, that during the entire afternoon of November 23, the time when Spicer testified that he went with plaintiff in error into the attic to put oil on the shingles, the door between the room in which he was working and the room from which the stairs ascended to the second floor was open; that there was no covering on the floor of the latter room or stairs; that the stair landing was flush with this open door, and that he was positive that plaintiff in error and Spicer did not go up the stairway that afternoon. He also testified that he did not see Spicer in the place that afternoon. Three witnesses who were at the card game on that evening testified that Spicer left the Dole house with them on the night of November 23 and did not remain with plaintiff in error, as he testified. Eleven witnesses testified that the fire, when they first saw it, was on the top of the roof near the chimney and that there was no fire at the southwest, northwest or northeast corner, where Spicer testified the shingles were saturated with kerosene. Plaintiff in error denied that he had saturated the shingles or that he had ever been in the attic of the Dole house or that he set fire to it or caused it to be burned.

One Floyd Dawdy, a fireman, testified that he took the fire hose onto the roof of the porch and could see into

the attic windows, and that there was no fire in the attic at that time, the fire being entirely on the outside or top of the roof; that while the fire had burned through the roof in places and thus lighted the attic, there was no fire in the attic below the roof. One Burrell Shuck testified that he lived directly across the street from the Dole house; that between 10:30 and 11:00 o'clock his attention was attracted to the Dole house by reason of the chimney burning out and sparks coming from the top of it; that soon after that he went out to get a bucket of coal and saw fire on the roof, northwest of the chimney. One J. N. Seiling testified that he saw the fire about 11:00 o'clock, and that it was high up on the roof when he first saw it.

Arson consists not only of the fact that a building has been burned but likewise that it has been willfully and unlawfully fired by some responsible person. (*Carlton* v. *People,* 150 Ill. 181.) In this case the fact that the building was burned is conceded, but it was necessary that the People prove, beyond a reasonable doubt, that the plaintiff in error willfully and maliciously set fire to it. There is no evidence in the record whatever that plaintiff in error had any motive for destroying this property, nor, as we have said, that he had any information concerning the existence of insurance on it. Cases cited by the People in support of their argument that evidence of the existence of insurance policies was competent, are those where some combination was shown between the party charged with the burning and the owner of the property insured or where the accused was himself the owner of the property. Those cases are not in point here. The only evidence in the record tending to establish the charge against the plaintiff in error is that of Spicer and the statement of Reedy of a conversation had with plaintiff in error some months after the fire. Spicer had been convicted of a felony. He was in that class of persons whose testimony is legally discredited because of their conviction of an in-

famous crime. In addition to that he was by his testimony a self-confessed accomplice, whose evidence could be received and acted upon only with great caution. While such evidence was competent, and while a conviction may in a proper case be sustained on the uncorroborated testimony of an accomplice, the record in this case not only shows no material corroboration of Spicer's testimony, but he is discredited by numerous disinterested witnesses whose testimony is in nowise discredited or impeached. If their testimony is to be believed the testimony of Spicer could not be true. His testimony is shown to be utterly unworthy of belief. Where the credibility of an accomplice is so impeached as appears from this record, a conviction based solely upon such testimony cannot stand but should be and will be reversed. *People* v. *Hudson,* 341 Ill. 187; *People* v. *Ravenscroft,* 325 id. 225; *People* v. *O'Hara,* 332 id. 436; *People* v. *Harvey,* 321 id. 361; *People* v. *Pattin,* 290 id. 542.

Complaint is also made of instructions given on behalf of the People and refusal of instructions offered on behalf of the defense, but in our view of the record it is not necessary to consider such complaint.

There is no credible evidence in the record that the plaintiff in error caused the fire which destroyed the building. Not only is the theory of the People as to the manner in which this fire was occasioned unsupported by any credible evidence, but there is an abundance of testimony of disinterested witnesses disproving such theory.

We are of the opinion, therefore, that the record in this case does not justify a re-trial, and the judgment will be reversed.

*Judgment reversed.*