## Mary Sommerio, Appellant, v. Prudential Insurance Company of America, Appellee.

### Gen. No. 39,037.

Opinion

filed March 30, 1937.

Golan & Golan, of Chicago, for appellant; Samuel L. Golan and A. Lawrence Hoffman, of Chicago, of counsel.

Hoyne, O'Connor & Rubinkam, of Chicago, for appellee; Nathaniel Rubinkam and Willliam S. Allen, of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

Plaintiff brought suit in the municipal court to recover $2,000 upon a receipt given her deceased husband, pursuant to an application for life insurance, no policy having issued. The case was tried by the court without a jury, resulting in findings and judgment against plaintiff, and this appeal followed.

The essential facts disclose that April 20, 1930, Joseph Ditore, defendant's agent, took an application for intermediate monthly life insurance, which required no medical examination, from Thomas Sommerio. At the same time Sommerio paid Ditore the first monthly premium of $3.26, and received in return the following receipt:

"It is understood that if this payment is equal to the full first monthly premium on said policy (but not otherwise), the insurance shall take effect from the date of the application, in accordance with the provisions of the policy applied for, *provided said application is approved and accepted at the Home Office of the Company, in Newark, N. J.,* under the plan, for the premium paid and amount of insurance applied for and provided the life proposed was in sound health on the date of the application. It is further agreed that said Company will return the amount mentioned hereon if it declines to grant a policy on the above life." (Italics ours.)

Ditore severed his connection with defendant shortly after the application was taken. Upon the hearing of the cause he and plaintiff both testified that when the premium was paid by Sommerio, and the receipt given, Ditore assured the applicant that the policy would be

effective as of that date. The application was forwarded to the home office in Newark, New Jersey, where a question arose as to the correctness of some of the answers made in the application, and after considerable delay Lloyd T. Mickle, an assistant superintendent, called on the Sommerios and on May 9, 1930, procured a second application, giving a receipt for the original. Sommerio died June 3, 1930. Upon refusal of the company to pay the amount of the insurance applied for, suit was instituted.

The question presented is whether plaintiff can recover on her husband's application and the receipt given him, the policy never having been issued. In *LaBarre v. Prudential Ins. Co. of America,* 284 Ill. App. 653 (Abst.), 2 N. E. (2d) 354, we held under similar circumstances that recovery could not be had on a receipt and application identical to the receipt and application here in question, where the application was not approved in accordance with the provisions of the receipt, and plaintiff's decedent died before the policy issued. There was evidence in that case tending to prove that the policy was rejected and that one of the defendant's agents had on several occasions called to so advise the decedent but was unable to find him. It was plaintiff's contention that because the agent had accepted the initial premium and defendant had elected to retain same until after decedent's death, that it was bound to pay the amount of the policy, but we held that the record supported the contention that the policy was not approved, as required under the provisions of the receipt given deceased, and therefore no contractual relationship was created which would obligate the defendant to pay the amount claimed.

In the case at bar the policy was neither approved nor rejected, and plaintiff takes the position that the provision in the receipt making the insurance effective from the date of the application, ''provided said appli-

cation is approved and accepted at the home office of the Company at Newark, N. J." was waived by defendant through the representation of its agent, Ditore, who assured the applicant that the policy would be effective as of the date the application was made. This contention raises two questions: (1) Did Ditore have authority to waive the provisions of the receipt, and (2) was it competent for plaintiff to prove Ditore's authority as agent by his own testimony?

Ditore testified that he was an "insurance salesman," and also occupied the position of assistant superintendent in one of the offices of the Prudential Insurance Company in Chicago; that as such he had some four or five salesmen under his charge, and that it was his duty to see that they were doing their work properly and selecting acceptable risks. It appears from the uncontroverted evidence that Ernest M. Berger was the superintendent in charge of the office, and that there were several assistant superintendents, including Mickle and Ditore. Berger, who had been in charge of the Chicago office for some twenty-seven years, testified that an assistant superintendent has no power to waive the conditions in the receipt; that Ditore and other agents had so-called instruction books issued to them, which defined their duties and powers, and that the waiver of conditions in the receipt was not included in the authority given Ditore or other agents; that the assistant superintendent merely looked over the accounts of the agents who were working under him, wrote business for them, and supervised their activities. Defendant produced other evidence to the same effect.

The only evidence adduced by plaintiff to show Ditore's authority was his own testimony, but it has been consistently held by authorities in this and other States that the power of an agent can be proved only by tracing it to the source of his alleged authority, i. e.,

his principal (*Dodson v. Loaleen Mut. Benefit Ass'n,* 247 Ill. App. 283; *Merchants Nat. Bank v. Nichols & Shepard Co.,* 223 Ill. 41), and that an agency cannot be shown merely by the statements and declarations of the alleged and supposed agent. (*Patton v. Young,* 233 Ill. App. 515.) Plaintiff concedes this to be the rule, but states in her reply brief that defendant did not specifically object to Ditore's testimony. An examination of the record rebuts this assertion, because it appears, not only from the supplemental abstract of record filed by defendant but from a careful reading of the record itself, that defendant's counsel objected to substantially all the questions directed to Ditore relating to his authority.

As applicable to the question of proving agency, plaintiff further contends that it may be shown by the agent's own testimony that such a course of conduct or dealings was pursued, as will justify the presumption of his authority to act and bind his principal. It is argued that Ditore had authority to take applications, collect the premiums, forward the applications to the home office, and deliver the policies when issued, and that this constituted him a general agent. It is known from common experience that all solicitors of insurance, no matter how limited their authority may be, are authorized to accept an application and the payment of the initial premium, and to forward same to the proper office, and, when the policy is issued, to deliver it to insured, but this does not constitute them general agents if their authority is in fact otherwise limited, and in order to show that a solicitor has broader powers, or the powers of a general agent, it is incumbent upon the party so contending to show, by competent evidence other than the testimony of the agent himself, the specific authority claimed.

Plaintiff in her brief and reply brief, and on oral argument, relied principally on *Nieman v. Security*

*Benefit Ass'n,* 350 Ill. 308, and *Massachusetts Mut. Life Ins. Co. v. Sexton,* 255 Ky. 309. In the *Nieman* case the district manager of the defendant company, in the presence of its medical examiner, asked the applicant certain questions, the answers to which the medical examiner wrote in the application. To questions whether she had ever been an inmate of an asylum, sanitarium or hospital, or whether she had consulted a physician in the last five years or been rejected by another insurance company, she gave affirmative replies. The district manager, however, wrote negative answers to all of these questions in the application, which was then signed. The by-laws of the company, a mutual benefit society, required delivery of the certificate and its signature by the applicant while the applicant was in good health, and forbade the waiver of conditions of its policies by its agents. A certificate of insurance was issued and the premium paid. Shortly thereafter the applicant died and the beneficiary sued on the certificate. The court, in the course of its opinion, said that "a *general agent,* clothed with power to solicit insurance, receive the application and forward it to the company, receive and deliver the policy and collect the premium, has power to waive a condition of the policy notwithstanding that power is negatived by provisions in the policy and his contract of employment." It appears from the opinion that the district manager at the time he delivered the certificate knew the applicant was not in good health, and the court said there was ample proof in the record that the condition of the policy that it should not go into effect until it was delivered to and signed by insured while in good health "was waived by appellant." The elements of fraud by the company's agent and his knowledge as to the physical condition of the assured are emphasized in the opinion, and, when considered together with the fact that the district manager took

the application, distinguishes the decision from the case at bar.

In *Massachusetts Mut. Life Ins. Co. v. Sexton, supra,* an action was brought upon a life insurance policy by the legal representative of insured, who was killed a day or two after application was made but before delivery of the policy and before payment of the first premium. The court held that a *general agent* of a life insurance company, notwithstanding contrary provisions in the application, is authorized to agree that the insurance was to go into immediate effect, and with reference to the failure of the applicant to pay the initial premium, which had been waived by defendant's general agent, it was said that "manifestly, if a policy provision may be altered or waived by the *general agent,* there is no reason why a similar provision (payment of premium) in the application may not be altered or waived." Plaintiff's counsel asserts that the Kentucky case is "on all fours" with the case at bar, but there, again, the uncontroverted evidence showed that the general agent had taken the application, and there was no question as to his authority. In this proceeding Ditore's authority was sharply contested, and there is no contention that he was general agent and no competent evidence that he had authority to waive conditions in the receipt.

We find in defendant's brief numerous decisions holding that evidence of an insurance agent's power to take applications, collect the premiums, forward the applications to the company for its acceptance or rejection, and deliver the policies when issued to the applicants, does not show authority on the part of such agent to make contracts of insurance. It was so held in *Patterson v. Prudential Ins. Co. of America,* 23 S. W. (2d) 198 (St. Louis Court of Appeals, Mo.), a case where Edward Young signed the application and paid the first premium, for which a receipt was issued

identical in form to that in the case at bar. One Henry Fritz was an assistant superintendent of the insurance company in its St. Louis office. He solicited the insurance and it was claimed that he promised plaintiff that her son, Edward Young, was immediately insured. Young was killed a week later in an automobile accident, and no policy was ever delivered to plaintiff, but the evidence indicated that the application had been approved and the policy would have issued had the accident not occurred. In reversing a judgment for plaintiff, entered pursuant to the verdict of a jury, the court said that it knew of no exception to the rule that evidence of an insurance agent's power to write applications, collect and forward applications and deliver policies, does not show his authority to make contracts, and that "looking to the four corners of the receipt, . . . we cannot avoid the conclusion that it was not an unqualified acceptance on the company's part, . . ."

A similar conclusion was reached in *Field v. Missouri Life Ins. Co.*, 77 Utah 45, 290 Pac. 979, where under a similar form of receipt and payment of a premium it was held that oral representations as to when the policy should take effect, made contemporaneously with the execution of the application, were merged in the written instrument and cannot be relied on as against the express terms of the receipt. Other cases so holding are *Miller v. Illinois Life Ins. Co.*, 255 Ill. App. 586; *Braman v. Mutual Life Ins. Co.*, 73 F. (2d) 391, and *Jacobs v. New York Life Ins. Co.*, 71 Miss. 656, 658, 15 So. 639.

After carefully considering the facts and the arguments advanced by counsel, we have reached the conclusion that no competent showing of Ditore's authority was made by plaintiff to justify the contention that he had power to waive the provisions of the receipt. The record rather supports the conclusion that as assistant superintendent his powers were limited and

that he was under the direct authority of Mr. Berger, who had charge of the office. In the cases relied on by plaintiff the applications were taken by a general agent, as to whose authority there was no issue or controversy. That presents a different question. In order to recover upon an application where it is claimed that the approval of the policy was waived by the agent, a clear showing should be made that the agent had authority to waive provisions of the receipt, and, in the absence of such showing, oral conversations had contemporaneously with the signing of the application should not be given effect as against the express written provisions of the receipt stating otherwise.

For the reasons stated the judgment of the municipal court should be affirmed, and it is so ordered.

*Judgment affirmed.*

John J. Sullivan, P. J., and Scanlan, J., concur.