SHEILA TAYLOR, Plaintiff-Appellee, Cross-Appellant, *v.* CHECKER CAB Co. *et al.,* Defendants-Appellees.—(PUBLIC TAXI SERVICE, INC., Defendant-Appellant, Cross-Appellee.)

(No. 60074; )

First District (3rd Division)—November 20, 1975.

414

Irvin Tischer, of Chicago, for appellant Public Taxi Service.

Sweeney and Riman, of Chicago, for appellees Checker Cab Co. and Napolean Smith.

Andrew M. Raucci, of Chicago, for appellee Sheila Taylor.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Sheila Taylor, brought action against defendants Public Taxi Service, Inc. (Public), Checker Taxi Company, Inc. (Checker); and Napolean Smith for injuries sustained in a collision between a Public taxi in which she was a passenger and a Checker taxi driven by Smith. Following trial by jury, a verdict for $2,000 was returned in favor of plaintiff against all the defendants. Thereafter, judgments notwithstanding the verdict were entered for defendants Checker and Smith. Judgment was entered upon the verdict of $2,000 against Public.

Public appeals, contending that the trial court erred in directing a verdict for Checker and Smith and in refusing to direct a verdict in favor of Public. It further contends that the court erred in admitting hearsay testimony, in improperly excluding testimony as to bias of a witness, and in improperly restricting the cross-examination of one witness and the redirect examination of another. Plaintiff cross-appeals and also contends that the trial court erred in directing a verdict in favor of Checker and Smith. The facts follow.

The accident occurred at approximately 6 P.M. on November 13, 1969. At the time, there was intermittent rain and snow, and the streets were wet and slippery. The accident took place in the southbound lanes in the 500 block of North Michigan Avenue in Chicago, which consisted of three lanes of moving traffic and one lane of parking.

Plaintiff was the sole passenger in a Public taxi traveling south on Michigan Avenue in the westernmost lane of traffic. At the intersection of Michigan Avenue and Ohio Street, the driver, Henry Goss, stopped for a red traffic light at the head of his lane, abreast of the lead automobiles stopped in each of the two southbound lanes to his left. At the next intersection to the south, U-turns are permitted on Michigan Avenue. When the traffic light changed to green, Goss started forward, then observed a Checker taxi making a U-turn from northbound to southbound. As it completed the turn and entered the westernmost southbound lane Goss applied his brakes but his vehicle began to skid and struck the Checker taxi in the rear. Although no apparent damage resulted to either vehicle, plaintiff alleged that she was thrown to the floor of Goss's taxi and injured her back.

Plaintiff filed the instant suit against Checker and its driver, Napolean Smith, as well as defendant Public and its driver, Henry Goss. Before the start of trial, Goss was dismissed as a party-defendant on the motion of plaintiff.

At trial, plaintiff testified as to the occurrence and her injuries. She stated that she first observed the Checker taxi while it was making the U-turn, but she could not estimate the distance between the two vehicles at various points prior to the collision.

Napolean Smith testified that he was driving north on Michigan Avenue when he picked up a woman passenger who wanted to go south into the Loop area. He then drove north to a point on Michigan Avenue where U-turns are permitted; stopped, and observed that the southbound traffic was just beginning to move through the intersection at Ohio. He completed his U-turn and had moved about 50 feet south in the west lane of traffic when his taxi was struck in the rear by Goss's vehicle. He estimated his speed at the time of impact was 10 to 15 miles an hour. On cross-examination Smith could not recall whether he had to wait for any southbound traffic to clear before he began his U-turn. At the time, the southbound Michigan Avenue traffic moving through the Ohio Street intersection was approximately 50 yards away, proceeding at a normal speed of 15 to 20 miles per hour. After completing the U-turn, Smith had driven 40 to 45 feet south before his taxi was struck in the rear. He saw Goss's taxi in his rear-view mirror about 15 feet behind him before the impact.

416

The deposition of Nancy Breeden, passenger in the Checker taxi, was read into evidence by Checker. She stated that the oncoming southbound traffic on Michigan Avenue, including Goss's vehicle, was about three car lengths behind her taxi as it completed the U-turn; she estimated that after making the U-turn her taxi had proceeded south on Michigan Avenue about two car lengths before it was struck in the rear.

Charles Bellar, called by Checker as a witness, testified. He was employed by Checker as accident investigator and on March 17, 1970, obtained a signed statement in writing from Henry Goss concerning the accident. Thereupon, Public objected that Goss's statement could only be used for impeachment and was not admissible substantively. The trial court overruled the objection on the basis that the statement constituted an admission by an agent and was binding upon the principal, Public. Bellar was then allowed to refresh his memory with the statement and to testify as to Goss's statements therein. Bellar testified that Goss had stated he was approimately eight car lengths north of the Checker taxi when it began its U-turn; that upon seeing the Checker taxi he immediately applied his brakes but began to skid; and that the point of impact between the two vehicles was about 75 feet south of the U-turn location. Bellar further testified, on cross-examination, that he had been an investigator for Checker for 10 years and had been a taxi driver before that. Some 15 years ago he had driven a taxi for the Flash Taxicab Company. The trial court sustained Checker's objection to further inquiry into Bellar's employment background.

Public then renewed its objection to Bellar's testimony concerning the contents of Goss's written statement, and argued that the statement could not constitute an admission against it because at the time the statement was given Goss was no longer in Public's employ. The trial court again overruled the objection.

Henry Goss was called by Public to testify on direct examination. As he drove through the Ohio Street intersection the vehicles in the two southbound lanes to his left had accelerated and as a result were a few feet in front of him. He was about half way between Ohio Street and the next intersection to the south when he first noticed the Checker taxi making a U-turn in front of him. He immediately braked, but his taxi began to slide and slid an estimated 10 to 20 feet before it made a very slight contact with the rear of the Checker taxi. Goss further testified on cross-examination. When he first observed the Checker taxi it was facing west and was making a U-turn. He braked immediately. The distance between the two vehicles at that point was estimated to be 30 to 40 feet. As he applied his brakes the Checker taxi completed the U-turn and entered the west lane of southbound traffic. When he first saw the

Checker turning, his own vehicle was still north of the U-turn location. In an effort to refresh his recollection, Goss was then shown his signed written statement that he had given to Charles Bellar. He testified that the statement did refresh his memory somewhat, but contained a few mistakes. On redirect examination Goss stated that he was in the employ of Checker at the time he gave the written statement to its investigator. Counsel for Public then attempted to question Goss as to the circumstances under which he had come to give the statement. The court sustained Checker's objection that such inquiry was outside the scope of the cross-examination.

Public then called Betty Swanson to testify. She was a claims secretary for Public, and had with her the personnel file of Charles Bellar, a former taxi driver for Public. Checker objected that the witness could only testify concerning matters within her own personal knowledge; that the contents of Bellar's personnel file were not impeaching in character; and that Bellar's testimony had been consistent with that given by the other witnesses. The court sustained the objection and refused to permit Swanson to continue her testimony. Public then made an offer of proof that if allowed to testify Swanson would state that Charles Bellar had been fired as a driver for Public for having an excessive number of accidents, and that he had forfeited a $100 bond as a result of damage caused in those accidents to equipment owned by Public.

The jury returned a verdict against all the defendants. Each of the defendants subsequently moved for the entry of a judgment notwithstanding the verdict. The trial court granted the motions of defendants Checker and Smith, but denied the motion of defendant Public. Judgment on the verdict was then entered against defendant Public only.

Defendant Public first contends that the trial court erred both in entering judgments notwithstanding the verdict for defendants Checker and Smith, and in refusing to enter a judgment notwithstanding the verdict for defendant Public. Defendant Checker raises the argument that Public, as a joint tortfeasor, has no standing to attack the entry of a judgment notwithstanding the verdict in favor of another joint tortfeasor. The question of the right of defendant Public to challenge the judgments notwithstanding the verdict entered in favor of its codefendants need not be reached since plaintiff's cross-appeal has also challenged the propriety of that action by the trial court. Moreover, in light of the evidence, we believe that the entry of a judgment notwithstanding the verdict in favor of any of the defendants was unwarranted.

■■ The standard for determining if a verdict should be directed or a judgment notwithstanding the verdict entered is whether all of the evidence, when viewed in its aspects most favorable to the opponent, so

overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504.) Here, plaintiff's complaint alleged negligence in the operation of both the Checker and the Public taxis. Specifically, it alleged that each vehicle was operated without sufficient regard to other traffic, at a highly dangerous speed, and operated without sufficient controls and braking ability for the conditions present at the time. Proof of these allegations would require evidence as to speeds of and distances between the two vehicles at various points prior to the collision. Yet, the jury was presented with three separate and inconsistent sets of estimates. As to the distance between the Checker taxi and the oncoming southbound Michigan Avenue traffic before Checker started its U-turn, defendant Smith estimated it to be 50 yards; Nancy Breeden, in her deposition, estimated it to be about two car lengths or approximately 30 feet; and Henry Goss estimated it as 30 to 40 feet. Smith also stated that the oncoming traffic appeared to be proceeding at a normal speed of 15 to 20 miles per hour. With regard to the distance the Checker taxi traveled southbound on Michigan Avenue before it was struck, defendant Smith estimated it to be 40 to 50 feet, and Nancy Breeden estimated it as two car lengths or again, approximately 30 feet. Henry Goss testified that he immediately applied his brakes when he saw the taxi turning in front of him and that he slid 10 to 20 feet before striking it. With these conflicting estimates, it cannot be said that all of the evidence, when viewed in its aspects most favorable to the plaintiff, so overwhelmingly favored any of the defendants that a contrary verdict could never stand. Failing that test, the issue of each defendant's alleged negligence should have remained with the jury. The court correctly denied the motion of defendant Public for a judgment notwithstanding the verdict, but erred in granting the similar motions of defendants Checker and Smith.

The testimony of Charles Bellar concerning the written statement he secured from Henry Goss has not been included in the above analysis because we believe that Bellar's testimony as to that statement was inadmissible against and prejudicial to defendant Public. Although we have concluded that the alleged negligence of the defendants remained a question of fact for the jury independent of Bellar's testimony, the determination of the jury as manifested by the verdict cannot be here reinstated. The improper substantive use made of Goss's statement at trial most probably affected the verdict of the jury to some degree and therefore prevents any judgment from being entered.

■■ Defendant Checker and plaintiff both argue that defendant Public has waived any error in the admission of Charles Bellar's testimony

concerning the contents of Henry Goss's statement by failing to object to its foundation at the time it was received. They point out that the objection that Goss was not in Public's employ at the time he gave the statement was not made until one day after Bellar had completed his testimony. We believe the objection to the error has been preserved. When Bellar began his testimony as to what Goss had said in his statement about the accident, defendant Public objected that the statement could only be used as a method of impeaching Goss's possible testimony and that the statement was substantively inadmissible. By phrasing the objection in this manner it is obvious that the underlying basis of the objection was that Goss's statement was hearsay. Such being the objection, it was then incumbent on defendant Checker to demonstrate that Goss's statement was either not hearsay or within an exception to the hearsay rule. However, assuming that the objection was merely a general one, it would still be sufficient to preserve the unstated grounds therefor, if as here, those grounds are self-evident and incurable. *Johnson v. Jackson* (1963), 43 Ill.App.2d 251, 193 N.E.2d 485; but *cf. Fandrich v. Allstate Insurance Co.* (1974), 25 Ill.App.3d 301, 322 N.E.2d 843.

■■ The written statement of Henry Goss is an out-of-court declaration offered for the purpose of establishing the truth of the matters asserted in it, and as such, is hearsay. As a general rule, the substantive use of such a statement at trial is inadmissible unless it comes within a recognized exception to the hearsay rule. The only hearsay exception which is arguably applicable to Goss's statement is one which deals with admissions by agents. A statement of an agent, when made in the exercise of his duties and pertaining to matters within the scope of his authority, may constitute a binding admission on the principal which can be introduced substantively against the principal. (*Quincy Trading Post, Inc. v. Department of Revenue* (1973), 12 Ill.App.3d 725, 298 N.E.2d 789.) Here, Goss was not expressly authorized to make any statement for defendant Public, nor is there evidence of record that Public ever ratified Goss's statement. In the absence of either circumstance, the statement is inadmissible against defendant Public unless the authority of the agent to speak may be implied from the nature of the authorized business, and the statement was made concerning a matter within the scope of the agency and while the agent was engaged in its performance. (Gard, Illinois Evidence Manual 218 (5th ed. 1963).) In the commentary to the foregoing, it is stated at page 219:

> "In the application of this rule it would seem plain that the fact of employment of a truck driver to drive a truck would not carry any implied authority for the truck driver to make admissions with respect to his negligence in the operation of the truck,

which could be offered in evidence against anyone other than himself, unless his declarations are independently admissible as spontaneous or excited utterances.

The agent may testify in court to any relevant matter of which he has knowledge, including the fact of agency, the extent of his authority, and to his acts and conduct with respect to the transaction in issue. It is his out-of-court statements which are the subject of above rule."

■■ The reasoning of the commentary is particularly cogent and applicable in the instant case. There existed no implied authority for Henry Goss to make a statement concerning the origin of this accident for his principal, defendant Public. Without authorization, Goss's statement would have been only substantively admissible against himself; however, after the start of trial, Goss was no longer a party-defendant. His statement was at no time substantively admissible against defendant Public. Moreover, the record reveals that at the time the statement was made Goss had terminated his agency relationship with Public. The contents of the statement were therefore also inadmissible against defendant Public because the statement was not made by its agent while he was engaged in the performance of his agency.

■■ Checker further argues that even if the admission of Bellar's testimony concerning Goss's statement was improper, the error was harmless because Goss testified to essentially the same facts on the witness stand. The record belies that assertion. Bellar testified that Goss had said in his statement that he was eight car lengths north of the Checker taxi when it began the U-turn and that the place of impact between the two vehicles was 75 feet south of the point where U-turns are permitted on Michigan Avenue. Goss testified that he was half way between the Ohio Street and the next intersection to the south when he first saw the Checker taxi making a U-turn in front of him. He estimated the distance between the two vehicles at this point as 30 to 40 feet. He stated that he braked immediately, but slid 10 to 20 feet into the rear of the Checker taxi. These two estimates of the distance involved in the accident cannot reasonably be characterized as essentially the same or even remotely similar. Indeed, Goss's statement indicates that substantially more stopping time was available to him than he testified to on the witness stand. The improper admission of Bellar's testimony concerning the contents of that statement was clearly prejudicial to defendant Public and requires that it be afforded a new trial.

As the admission of Bellar's testimony concerning the contents of the statement was error, the contention that the trial court additionally erred in restricting the redirect examination of Goss concerning the circum-

stances surrounding the making of that statement need not be reached. We will, however, consider the remaining contentions of error raised by Public which might recur at a new trial.

■■ Public contends that the trial court erred in excluding the testimony of Betty Swanson as to the possible bias of Charles Bellar toward defendant Public. Evidence which tends to establish or show a state of ill feeling on the part of a witness toward a party may be received at trial when it is direct and positive, rather than remote and uncertain. (*People v. Hanks* (1974), 17 Ill.App.3d 633, 307 N.E.2d 638.) It is evident from the offer of proof that defendant Public was attempting to establish through the testimony of Swanson the possible bias of Charles Bellar as a result of his being fired by and forfeiting a bond to defendant Public some 15 years ago. This evidence would have been too stale and remote in time to aid the jury in determining the weight to be afforded Bellar's testimony. The trial court did not abuse its discretion in excluding the testimony of Swanson. (*Trippel v. Lott* (1974), 19 Ill.App. 3d 936, 312 N.E.2d 369.) The contention that the trial court also erred in restricting the cross-examination of Bellar fails for the same reason. The information that defendant Public was seeking to elicit from that portion of its cross-examination of Bellar was his possible bias resulting from the same past events.

The judgments of the trial court are reversed, and the cause is remanded for a new trial not inconsistent with the views expressed herein.

Judgments reversed; cause remanded for a new trial.

DEMPSEY and McNAMARA, JJ., concur.