C.L. MADDOX, INC., Plaintiff and Counterdefendant-Appellee, v. ROYAL INSURANCE COMPANY OF AMERICA, f/k/a Royal-Globe Insurance Company, Defendant and Counterplaintiff-Appellant.

Fifth District No. 5—89—0001

Opinion filed February 26, 1991.

William S. Daniel, of Daniel Law Offices, P.C., of Belleville, for appellant.

Donald V. Ferrell, of Jelliffe, Ferrell & Morris, of Harrisburg, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

C.L. Maddox, Inc. (insured), brought this action in the St. Clair County circuit court on a policy of insurance issued by the Royal Insurance Company of America (Royal), for damages to its business premises. The damage occurred at approximately 3:30 a.m. on August 19, 1981, as a result of an incendiary explosion and fire. Minutes before the explosion, 10-year-old Tammy Pankey reportedly saw Curtis L. Maddox, president and sole shareholder of the insured, enter and leave the insured building. Based on the incendiary nature of the explosion and fire and witness Pankey's identification of the insured's president and sole shareholder as the man entering and exiting the building shortly before the explosion, Royal denied the insured's claim under the policy. Other significant facts will be set forth as we discuss the various issues raised by Royal.

Count I of the insured's complaint sought compensatory damages for breach of contract for insurance coverage provided for damage to the structure, damage to contents, and business interruption. Count II was a claim for punitive damages for the breach of duty of good faith and fair dealing.

The jury awarded the plaintiff the sum of $243,211.85 on count I and found in favor of the defendant on count II. At a subsequent hearing the trial court found Royal's denial of the claim to be inten-

tional and in bad faith. The trial court awarded the insured $217,415.17 for Royal's bad-faith denial of the claim. Royal raises the following issues for our review:

I. Whether the trial court committed reversible error by allowing into evidence a letter written by the insured's insurance broker, William Rea.

II. Whether the trial court committed reversible error by excluding a portion of the appraisal report prepared by John Olson, which contained Olson's opinion that North Harrisburg would undergo economic development, on the issue of C.L. Maddox's motive to commit arson.

III. Whether the trial court committed reversible error by excluding a portion of John Olson's appraisal report, which contained Olson's opinion of the subject property's fair market value, on the issue of C.L. Maddox's motive to commit arson.

IV. Whether the trial court committed reversible error by excluding evidence of Curtis L. Maddox's personal financial condition on the issue of his motive to commit arson.

V. Whether the trial court committed reversible error by allowing the insurance broker, William Rea, to testify to his legal conclusion that plaintiff was "entitled to recover" under the insurance policy in question.

VI. Whether the trial court committed reversible error by excluding evidence of the subject property's fair market value on the issue of damages.

VII. Whether the trial court committed reversible error in allowing the issue of punitive damages to go to the jury.

VIII. Whether the trial court committed reversible error by allowing the jury to view a videotape of a labor disturbance which took place in Galatia, Illinois, on August 18, 1981.

IX. Whether the trial court committed reversible error by allowing the jury to render a verdict in a case brought by a party who was not the real party in interest at the time of the trial.

X. Whether the trial court committed reversible error by its ruling denying defendant's motion for setoff.

XI. Whether the trial court committed reversible error by awarding plaintiff a $217,415.76 judgment against defendant as a statutory "vexatious and unreasonable" penalty.

We reverse and remand this cause for a new trial on the compensatory damages claim because of the errors committed by the trial court on issues I, II, III and IV. We will discuss other issues that may arise on the retrial of this cause.

# I.

## THE LETTER

■ Royal first argues that the introduction into evidence of a letter, which was written by William Rea and sent to Byron Wambles, a Royal employee, was error. Rea's letter is an out-of-court statement offered for the purpose of establishing the truth of the matters asserted in it, and, therefore, is hearsay. The only hearsay exception which is arguably applicable to Rea's letter is the "admission by agents" exception. *Taylor v. Checker Cab Co.* (1975), 34 Ill. App. 3d 413, 339 N.E.2d 769.

Royal argues that the exception is inapplicable because Rea was an insurance broker and not a Royal agent. The insured argues that the letter was properly introduced as an admission. The letter reads as follows:

"Byron, I know as a Royal employee there are some things you can't comment on, but I know two things (1) Curt Maddox did not do damage to his building [and] (2) Royal will eventually have to pay monies out."

■ In *Taylor* the court stated: "A statement of an agent, when made in the exercise of his duties and pertaining to matters within the scope of his authority, may constitute a binding admission on the principal which can be introduced substantively against the principal." (*Taylor,* 34 Ill. App. 3d at 419, 339 N.E.2d at 775.) However, the existence of the agency relationship cannot be shown merely by the statements of the alleged and supposed agent. *Sommerio v. Prudential Insurance Co. of America* (1937), 289 Ill. App. 520, 7 N.E.2d 631.

■ The record before us reveals that the only evidence presented by the insured to show the existence of the agency relationship between Royal and Rea was the testimony of Rea himself. Rea testified that he had the power to "write coverage" and "bind" Royal. This evidence is insufficient as a matter of law to establish the agency relationship. (*Sommerio,* 289 Ill. App. 520, 7 N.E.2d 631.) We also note that Rea testified that he was not an employee of Royal and that he was in fact an independent sales broker. He also testified that he did not have an exclusive agency contract with Royal and was not paid by it.

Moreover, even if there was sufficient evidence to establish that Rea was an agent of Royal, the insured would also have to prove that Rea, when writing the letter, was acting within the scope of his authority before the letter could be properly admitted into evidence. *Taylor,* 34 Ill. App. 3d 413, 339 N.E.2d 769.

There is no doubt that the insured failed to meet this burden. There is no evidence whatsoever indicating that Royal gave Rea the express authority to determine the validity of claims brought against it. Nor is there any evidence that Royal adopted or ratified Rea's statements in the letter. The insured, however, argues that Rea had the implied authority to determine the validity of claims brought against Royal. It is simply not reasonable to imply that Rea had the authority to determine the validity of claims brought against Royal from his power to write coverage for it. (See *Sommerio*, 389 Ill. App. 625, 7 N.E.2d 631.) We note also that Rea testified that his role was one of a "sales broker" and not one of a "claims manager."

■ In view of these facts, it is clear that Rea's comments in the letter were not admissions by Royal. The trial court erred in admitting the letter into evidence. As an alternative argument for admission of the letter, the plaintiff briefly asserted at trial that the letter could be admitted as notice to the defendant. However, this argument has not been presented to this court. Moreover, the admissibility of the letter on the notice basis goes only to the issue of bad faith on the insurance company's part, and the letter was introduced during plaintiff's case on the compensatory damages claim. Therefore, it could not have been properly admitted on the notice issue at that time. The prejudicial effect of the letter was further enhanced by the plaintiff's counsel's reference to it during closing arguments. We therefore reverse and remand this cause for a new trial on the compensatory damages claim. Since the punitive damages claim has been resolved against the plaintiff, at the new trial of this cause the letter, upon a proper objection by Royal, should be excluded from the evidence.

## II and III.

### THE APPRAISAL REPORT OF JOHN OLSON

Royal next contends that the trial court erred when it excluded from evidence the February 28, 1981, real estate appraisal report prepared by John Olson for Curtis L. Maddox and all testimony concerning it. Portions of the report were offered to show C.L. Maddox's motive to commit arson. More specifically, Royal attempted to admit the portion of the report which contained Olson's opinion that North Harrisburg would develop in the future and the portion of the report which contained Olson's opinion that the insured property's fair market value was $60,107.55. Royal argues that Mr. Maddox's knowledge of these facts prior to the explosion and fire tends to prove his motive for arson. The insured argues that the evidence was irrelevant and properly excluded.

■ Evidence tending to show the motive for arson is clearly relevant. In *Commerce Union Bank v. Midland National Insurance Co.* (1964), 53 Ill. App. 2d 229, 202 N.E.2d 688, the defendant raised the affirmative defense of arson. The court stated:

"Arson, by its very nature, is usually incapable of direct proof and the evidence is necessarily often of a negative nature. [Citation.] It has been held that the opportunity for the commission of arson, the motive inducing arson, and the identity of the person accused of arson may all be established by circumstantial evidence." *Commerce Union Bank*, 53 Ill. App. 2d at 239, 202 N.E.2d at 693.

■ The evidence indicated that the insured owned property in the North Harrisburg area before the fire and began moving its operation into the area in September of 1981, approximately one month after the fire. The fact that Mr. Maddox had knowledge of North Harrisburg's future business potential prior to the explosion and fire, when coupled with his knowledge that the fair market value of his building was only $60,107.55, tends to show that he had a motive to destroy his property. We see no reason to exclude the portion of the appraisal predicting future development in North Harrisburg. On retrial of this cause such evidence should be admitted.

■ The portion of the report containing Olson's opinion on the fair market value of the insured's property poses a more difficult question. The fair market value of the property, as indicated above, was $60,107.55. It had been insured for some time for $100,000, and shortly before the fire Royal required the insured to raise its coverage from $100,000 to $240,000. The insured argues that because Royal required it to raise its coverage on the property, the evidence of the fair market value should be excluded. It also argues that *Smith v. Allemannia Fire Insurance Co.* (1920), 219 Ill. App. 506, prevents the introduction of fair market value evidence into the case. Royal contends that the fact that the insured let it raise its insurance coverage without disclosing the property's fair market value tends to prove a motive to commit arson. While it strains credulity to accept that Royal was completely unaware of the property's fair market value when it required the insured to raise its coverage from $100,000 to $240,000, we must agree with Royal that evidence of the property's fair market value should have been admitted to show the insured's motive for committing arson. While it is true that Royal required the insured to raise its coverage, the fact remains that the insured was aware of the property's fair market value before the explosion and fire occurred. The jury should have been given the opportunity to consider the prop-

erty's fair market value insofar as it relates to the insured's motive to commit arson.

The insured argues that the evidence is inadmissible under *Smith*. We disagree. *Smith* pronounced a rule of damages and thus it is inapplicable on the issue of the insured's motive to commit arson.

By approving the introduction of fair market value evidence for motive purposes in this case, we are not holding that its introduction would be proper in all cases. (See, *e.g., People v. Alward* (1933), 354 Ill. 357, 188 N.E. 425.) Only when there is a sufficient amount of "other" evidence which tends to show that the insured was responsible for the fire is its introduction into evidence proper. In the present case, among other things, there was evidence that the insured was having some financial difficulties, that it owned property at another industrial site, and there was an eye witness who reportedly saw C.L. Maddox, the insured's president and sole shareholder, enter and leave the building just prior to the explosion and fire. Under these circumstances we feel that the evidence of the property's fair market value should be admitted to show the motive of the insured to commit arson.

## IV.

### FINANCIAL CONDITION OF C.L. MADDOX

Royal next contends that the trial court improperly excluded evidence of C.L. Maddox's personal financial difficulties. The trial court's ruling was based on the fact that the insured was C.L. Maddox, Inc., and not C.L. Maddox, individually. Royal argues that the trial court's exclusion of the evidence was improper in view of the fact that C.L. Maddox was the sole shareholder of C.L. Maddox, Inc. It also argues that the evidence should have been admitted to rebut the testimony of R.C. Davenport. We agree.

■ A corporation may not recover insurance proceeds if its sole shareholder is found to be responsible for the destruction of the property. (*D.I. Felsenthal Co. v. North Assurance Co.* (1918), 284 Ill. 343, 120 N.E. 268.) In *Felsenthal*, where Mr. Fox owned nearly all of a corporation's stock and was the assignee of all stock he did not own, the court stated:

> "It is true, as contended by appellant, that the general rule of law is that the willful burning of property by a stockholder in a corporation is not a defense against the collection of the insurance by the corporation, and that the corporation cannot be prevented from collecting the insurance because its agents

willfully set fire to the property without the participation or authority of the corporation or of all of the stockholders of the corporation. When, however, the beneficial owner of practically all of the stock in a corporation, and who has the absolute management and control of its affairs and its property and is its president and a director, sets fire to the property of a corporation or causes it to be done, there is no sound reason to support the contention of appellant that the corporation should be allowed to recover on a policy for the destruction of the corporate property by a fire so occasioned. Every principle of insurance law and sound reasoning would seem to be against such contention." (*Felsenthal*, 284 Ill. at 348-49.)

Given the fact that an insured corporation cannot recover if the sole shareholder is found to have destroyed the corporate property, it would be a strange rule which would preclude the admission of evidence which tends to show that the sole shareholder was responsible for the fire.

The *Felsenthal* court also discussed the fact that the trial court allowed the defendant insurance company to conduct a broad cross-examination of Mr. Fox. The court did not discuss the details of the cross-examination. However, it stated:

"Fox, then, was really to be considered, when examined as a witness, the same as if he were the insured. The same latitude in cross-examination of Fox was permitted in this case by the trial court as if he were the insured. The court committed no error in so doing." *Felsenthal*, 284 Ill. at 351.

■ The issue in this case was whether or not C.L. Maddox, sole shareholder and president of the insured, was responsible for the explosion and fire. If he was, the insured could not recover. (*Felsenthal*, 284 Ill. 343.) We feel that evidence which tends to prove that C.L. Maddox caused the fire should be admitted even though the insured is C.L. Maddox, Inc. As mentioned above, evidence of motive is admissible when the affirmative defense of arson is raised. (*Commerce Union Bank*, 53 Ill. App. 2d 229, 202 N.E.2d 688.) The evidence of C.L. Maddox's financial difficulties tends to show his motive to commit arson. The trial court erred in excluding the evidence.

In addition to the foregoing, the evidence should have been admitted because the insured introduced evidence of the personal financial condition of C.L. Maddox.

After the trial court granted the insured's oral motion *in limine* and excluded all evidence relating to C.L. Maddox's personal financial condition, the insured's counsel cross-examined R.C. Davenport,

former president of the Harrisburg National Bank. The following exchange took place between the insured's counsel and Mr. Davenport:

"Q. Mr. Davenport, in reviewing Group Exhibit 8, sir, I note that several of those notes appear to be unsecured. Is that fact correct?

A. That's correct.

Q. What does that mean, Mr. Davenport?

A. That means that only when the signature of the principal, C.L. Maddox, that these were made—we have had enough confidence *in this person* and still do, that we said that we still do business of a substantial amount on an unsecured basis *with him.*

Q. Mr. Davenport, you have testified extensively about various months, various accounts here concerning C.L. Maddox, Inc. Is it correct, sir, or do I understand correctly from your testimony that the Harrisburg National Bank's association with *C.L. Maddox or Curt Maddox* or C.L. Maddox, Inc. has been satisfactory as far as the bank is concerned?

A. We consider *him* one of our best customers.

Q. And has *Mr. Maddox* always, based upon your records and information, paid monies he has owed this bank when due?

A. Yes. If not exactly when due, when agreed upon." (Emphasis added.)

After this testimony was received Royal sought to have the trial court's earlier oral motion *in limine* lifted. The trial court denied Royal's request. The testimony set forth above clearly indicates that the insured interjected evidence of C.L. Maddox's personal financial condition after obtaining an *in limine* order precluding Royal from doing so. Mr. Davenport's testimony, in essence, was that C.L. Maddox was financially sound. The jury was left to infer that C.L. Maddox had no reason to destroy his company's property. We feel that Royal should have been given the opportunity to introduce evidence of C.L. Maddox's financial difficulties in an attempt to rebut this inference. For the reasons set forth above, we feel that the trial court erred in excluding the evidence of C.L. Maddox's personal financial difficulties. On the retrial of this cause the evidence should be admitted.

## V.

### THE TESTIMONY OF WILLIAM REA

Royal next contends that certain portions of Mr. Rea's testimony

were improper and inadmissible. The testimony relevant to this issue is as follows:

"Q. Based upon the proof of loss that was submitted, identified as Plaintiff's Exhibit 4, the estimate of Walker & Associates Engineering that is attached to it, and in your judgment, sir, under the terms and conditions of the policy, what was C.L. Maddox, Inc. entitled to recover on the structure?

A. $240,000."

No objection was made by Royal to this testimony. A few moments later the following exchange took place:

"Q. In your opinion, sir, based upon your years as an adjustor, your years in the industry, being a representative of Royal selling their policy of insurance, based upon the proof of loss submitted by Mr. Maddox on behalf of C.L. Maddox, Inc., based upon the co-insurance provision of the policy which you have already described for us, can you tell us what he was entitled to recover under the policy as to damage and lost contents?

MR. DANIEL: Objection. Calls for a conclusion as to entitlement to recover, which is not a sales agent determination; it's a claim determination. Again if the question was only as to numbers I wouldn't have the objection Your Honor.

THE COURT: The objection is overruled.

Q. (By Mr. Farrell) Do you remember my question?

A. Yes, sir. $93,045, 93,045.

Q. All right, now with respect to the structure, it is your opinion that under the policy and based upon the proof of loss, C.L. Maddox was entitled to recover what?

MR. DANIEL: Same objection.

THE COURT: Same ruling.

Q. (By Mr. Farrell) You may answer.

A. 240,000, 240,000, $240,000."

Royal argues that the trial court erred in admitting this testimony into evidence. It contends that Rea's comments were nothing more than improper expressions of opinions. The insured argues first that Royal waived this issue on appeal by failing to properly object at trial. They also contend that Rea was an agent of Royal and that his testimony constituted an admission of liability by Royal. They also argue that Rea was "qualified" to express the opinions set forth above.

■■ ■ In view of the fact that we have reversed because of the admission of Rea's letter, we need not address the waiver question raised by the insured. However, we will comment on the admissibility issue since the insured may attempt to elicit this testimony on the re-

trial of this cause. We need not repeat our agency analysis; it is sufficient to state that Mr. Rea was not an agent of Royal, and admission of the testimony on that ground would be error. We note at this point that from the tenor of Royal's objections it can be inferred that it would have had no objection to Rea's testimony relating to the dollar value of the loss. Royal's objection focuses on Rea's statement that the insured is "entitled" to recover. We feel that Rea's expression of the opinion that the insured was entitled to collect from Royal was improper.

> "An opinion that a party should win is not a permissible expert opinion. This is so even though expert opinion is permissible upon some of the ultimate issues involved in determining who should win." (*In re K.L.M.* (1986), 146 Ill. App. 3d 489, 498, 496 N.E.2d 1262, 1268.)

(See also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §704.1, at 535 (5th ed. 1990).) Rea's testimony did not provide the jury with an opinion on a fact in the case. It was essentially Rea's opinion that the insured should win the case. Therefore, the admission of the testimony was improper and on retrial of this cause it should be excluded.

## VI.

### FAIR MARKET VALUE ON THE ISSUE OF DAMAGES

Royal next asserts that the trial court erred when it excluded evidence of the subject property's fair market value on the issue of damages. Both parties agree that the policy of insurance in question is an actual cash value policy. The controversy exists over how actual cash value is to be defined. The trial court defined actual cash value as replacement cost minus depreciation and excluded evidence of the building's fair market value. Testimony from both parties established that the replacement cost minus depreciation of the building was $345,000. John Olson, who was retained by C.L. Maddox, appraised the building's fair market value at $60,107.55.

Royal argues that Illinois Department of Insurance Rule 9.19(15), which defines actual cash value as reproduction costs minus depreciation, is inapplicable to commercial property. Royal asserts that actual cash value must be calculated by taking into consideration the structure's fair market value. We agree with Royal insofar as it asserts that Rule 9.19(15) applies only to residential structures. Our research has disclosed no comparable rule relating to commercial property. However, we do not believe that the existence of this fact necessitates

the conclusion that fair market value must be considered to determine the actual cash value of commercial property on the issue of damages.

The issue was specifically addressed in *Smith v. Allemannia Fire Insurance Co.* (1920), 219 Ill. App. 506. In *Smith* the insured's property consisted of an office building with a basement store, which was severely damaged by fire. Reproduction costs minus depreciation on the structure amounted to $150,000, while the fair market value was determined to be between $80,000 and $100,000. The trial court awarded the insured damages of $78,409.26, and the appellate court reversed, stating:

"[A]ctual cash value means reproduction value less depreciation for age and not market value." *Smith*, 219 Ill. App. at 513.

In support of its decision, the *Smith* court, quoting Cooley in his briefs on the Law of Insurance, Vol. 4, page 3081, stated:

" 'If the property destroyed is a building, the measure of damages is not the market value of the building at the time of the loss, nor what someone would have paid for the building, but the actual value of the property at the time of the loss, as the insured is entitled to be indemnified for the loss sustained. The market value cannot be used as the test in determining the amount of recovery for the destruction of a building for various reasons. If there was no market demand for the property so it could be sold, it would have no value, and consequently there would be no loss. A farmer might have an insured building of the value of $5,000 on a farm, and yet be held to have sustained no loss by its destruction because there was no demand for land in the location, and the farm could not have been sold. If not salable at all, it might have a value to the owner as a home for himself and family or for business purposes. Again, the market value of some buildings (as, for instance, tenement houses) may be much greater than their actual value. Besides the market value rule would render it almost, if not quite, impossible in many cases to determine the amount of the loss.' " *Smith*, 219 Ill. App. at 512.

 █ While we are aware that other States have adopted a "broad evidence" rule which would permit the introduction of market value evidence (*McAnarney v. Newark Fire Insurance Co.* (1928), 247 N.Y. 176, 159 N.E. 902; *Messing v. Reliance Insurance Co.* (1962), 77 N.J. Super. 531, 187 A.2d 49), we decline to adopt such a rule. We hold, as did the *Smith* court, that actual cash value means reproduction costs less depreciation for age and not market value. Thus the evidence of the property's fair market value offered on the issue of

damages was irrelevant and properly excluded.

■■■ We have earlier indicated that evidence of the fair market value is admissible on the issue of motive to commit arson and now hold that it is inadmissible on the issue of damages. We are aware of the potential confusion which may exist when evidence is admitted for one purpose and excluded for another. Therefore we hold that the insured is entitled to the following limiting instruction: "This evidence of the property's fair market value is only to be considered on the issue of whether or not the insured was responsible for the explosion and fire. If you conclude that the insured was not responsible for the explosion and fire, then you must not consider this evidence on the issue of damages." This instruction should be given when the evidence is first introduced and again at the close of all the evidence when the other instructions are given.

## VII.

### PUNITIVE DAMAGES COUNT/ACQUITTAL

Royal next contends that the trial court erred in allowing the issue of punitive damages to be submitted to the jury. While Royal argues primarily that the alleged error was prejudicial because the jury was informed of its $898 million net worth, it also argues inferentially that certain other evidence which would ordinarily be inadmissible on the compensatory damage count was allowed into evidence on the punitive damages issue. Specifically Royal argues that the evidence of Mr. Maddox's acquittal on criminal charges of arson was improperly admitted into evidence.

This trial was conducted in two phases. After all evidence was received on the liability issue on the compensatory damages count, a hearing was conducted before the trial judge to determine if there was sufficient evidence to present to the jury on the punitive damages count. The trial court held the evidence was sufficient, and the punitive damage evidence, including evidence of the acquittal, was heard by the jury. The jury had not resolved the issue of liability on the compensatory damages count before hearing the punitive damage evidence.

Because Royal prevailed on the punitive damages count at trial, we need not address whether the introduction of the evidence on the issue of punitive damages was improper. However, we will discuss the acquittal evidence insofar as it relates to the compensatory damages claim because this evidence may be offered at the retrial of this cause.

■■■ ■ Evidence of an individual's prior acquittal in an earlier

criminal proceeding is inadmissible in a subsequent civil action. (*Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 398 N.E.2d 582.) "Since an acquittal might merely mean that the offense was not proved beyond all reasonable doubt, the acquittal is of no relevance in a civil proceeding where the facts need only be proved by the greater weight of the evidence." (*Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 59, 203 N.E.2d 160, 164; see also *Greenberg v. Aetna Insurance Co.* (1967), 427 Pa. 511, 235 A.2d 576.) Therefore, on retrial of this cause evidence of C.L. Maddox's acquittal on charges of arson should be excluded.

## VIII.

### THE VIDEO

Royal next contends that the trial court erred when it allowed a videotape showing a labor disturbance to be viewed by the jury. Royal argues that the tape was not relevant to the issues at trial and even if it was relevant, its prejudicial effect substantially outweighed its probative value. We disagree.

 █ "The determination of whether evidence is relevant is largely within the discretion of the trial court and a reviewing court will not disturb the ruling unless there has been an abuse of discretion." (*Ferdinand v. Yellow Cab Co.* (1976), 42 Ill. App. 3d 279, 286, 355 N.E.2d 547, 553.) "Any evidence that is offered to prove a proposition that is a matter of controversy in a case or is of probative value of a contested issue is 'material.' [Citation.] The evidence is relevant if it tends to prove an issue in controversy or make the matter more or less probable." *Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 199, 388 N.E.2d 1298, 1307.

In this case neither party denied the fact that the fire was of an incendiary nature. Royal defended this action by arguing that the insured through its agent, C.L. Maddox, was responsible for the explosion and fire. The videotape was relevant to the issue of the perpetrator of the fire. The insured had received threats in the past for its nonunion activities. The disturbance occurred approximately 24 hours before the explosion and fire, and the videotape showed individuals destroying a crane clearly labeled "C.L. Maddox, Inc." The videotape tended to rebut Royal's affirmative defense of arson.

Having determined that the evidence was relevant, we address Royal's other argument. Royal argues that the videotape's prejudicial effect substantially outweighed its probative value. We disagree.

 "The trial court's balancing of unfair prejudice and probative

value is completely within its discretion, and its decision on admissibility must be accorded 'great deference.'" *Crawford v. Edmonson* (1985), 764 F.2d 479, 484.

 The admission of the videotape may have hurt Royal's case; however, this does not mean the evidence was improper. After reviewing the videotape, we do not feel that its prejudicial effect substantially outweighed its probative value. Therefore, we hold that allowing the jury to view the tape was not error.

## IX.

### REAL PARTY IN INTEREST

Royal also argues that the trial court erred in allowing the jury to render a verdict in a case brought by someone other than the "real party in interest." On June 17, 1987, one month prior to trial, the insured assigned 100% of its chose in action against Royal to Harrisburg National Bank. Only C.L. Maddox and the bank were aware of the assignment. Royal was informed of the assignment after judgment was entered against it. As previously indicated, R.C. Davenport, former president of the bank, testified as to the insured's favorable standing at the bank.

 Royal contends that section 2—1008(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1008(a)) required the bank to be a named party to the suit. It contends that the failure of the bank to be named as a plaintiff renders the judgment void. However, the plain language of section 2—1008(a) leads to another conclusion. The pertinent portion provides:

"Abatement—Change of interest or liability—Substitution of parties. (a) Change of interest or liability. If by reason of marriage, bankruptcy, assignment, or any other event occurring after the commencement of a cause or proceeding, either before or after judgment, causing a change or transmission of interest or liability, or by reason of any person interested coming into existence after commencement of the action, it becomes necessary or desirable that any person not already a party be before the court, or that any person already a party be made party in another capacity, *the action does not abate,* but on the motion an order may be entered that the proper parties be substituted or added, and that the cause or proceeding be carried on with the remaining parties and new parties, with or without a change in the title of the cause." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 110, par. 2—1008(a).

The section clearly provides that a change of interest will not cause the action to abate. Upon motion a party may be added and the action will be carried on from that point. Furthermore, at the retrial of this cause the issue of surprise will not arise. Royal will be aware of whether or not the bank has an interest in the suit. If the bank has such an interest, Royal may add the bank as a party pursuant to section 2—1008(a) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1008(a)) and inquire of witnesses about their possible bias.

## X and XI.

### SETOFF AND VEXATIOUS DELAY

In view of our decision to reverse and remand this cause for a new trial, it is unnecessary for us to address Royal's contentions that the trial court erred in denying its motion for setoff and awarding the insured $217,415.76 for statutory "vexatious and unreasonable" delay.

In conclusion, we reverse and remand for proceedings on the compensatory damages claim consistent with this opinion.

Reversed and remanded.

RARICK, P.J., and HOWERTON, J., concur.