(No. 11746.—Judgment affirmed.)

THE D. I. FELSENTHAL COMPANY, Appellant, *vs.* THE NORTHERN ASSURANCE COMPANY, LTD., OF LONDON, Appellee.

*Opinion filed June 20, 1918—Rehearing denied October 2, 1918.*

1. INSURANCE—*when a corporation cannot recover insurance after fire directed by stockholder.* Where a fire which destroyed the property of a corporation is set at the direction of a stockholder who is beneficial owner of practically all the stock, has absolute control of the corporation as president and director and is a creditor of the company to an amount more than the insurance, the corporation cannot recover the insurance.

2. SAME—*incendiary will not be allowed to recover insurance indirectly.* An incendiary cannot by circuity of action recover from an insurance company a loss occasioned by his own willful conduct, which loss he could not recover by a direct suit against the company on a policy made direct to him.

3. EVIDENCE—*cross-examination of party in interest need not be confined to examination in chief.* The cross-examination of a party in interest need not be confined to the subject matter of the examination in chief.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding.

LANDON & HOLT, and JOHN J. BEILMAN, (ROBERT N. HOLT, of counsel,) for appellant.

PADEN & KROPF, for appellee.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

The D. I. Felsenthal Company, a corporation, brought suit in the municipal court of Chicago, for the use of Charles R. Carpenter, against the Northern Assurance Company, Ltd., of London, appellee, on a fire insurance policy issued in favor of said corporation, appellant. Two de-

fenses were interposed by appellee: (1) That the policy became void because gasoline was kept, used or allowed on the premises, contrary to the terms of the policy; (2) that said gasoline was fraudulently, knowingly and purposely ignited by said corporation, its officers, agents and employees, in such manner as to cause the fire and for the purpose of causing the fire and destroying the property. The jury found the issues against the plaintiff, and after overruling the motions for new trial and in arrest of judgment the court gave judgment for appellee and against appellant. On appeal the Appellate Court affirmed the judgment, and the cause comes to this court on appeal on a certificate of importance.

The undisputed facts in this record are that appellant is an Illinois corporation capitalized at $15,000. The entire capital stock of one hundred and fifty shares was up to the fall of 1910 owned in equal portions by David I. Felsenthal and Harry Felsenthal, brothers, and their father, Isaac Felsenthal. The corporation was engaged in the wholesale business of dealing in tailors' clippings, and had its warehouse and assorting rooms in leased buildings located at 902-904 South Morgan street, in Chicago, consisting of a three-story brick building with a small barn in the rear. In the fall of 1910 appellant was indebted to the Fort Dearborn National Bank in the sum of more than $20,000 and was called on by the bank for the payment of the debt. David I. Felsenthal went to Morris L. Fox, an old friend of the Felsenthal family, a dealer in metal at Racine, Wisconsin, and doing an extensive business with Chicago dealers, and induced him to come to the financial assistance of appellant. An inventory of the property of appellant was taken, and Fox went into the company about December, 1910, as finance man, not pretending to have any particular knowledge of the particular merchandise handled by appellant. Fox did not purchase any of the stock of appellant but for his financial aid was given half of the stock out-

right, and the three Felsenthals retained twenty-five shares each, which were assigned in blank and delivered to Fox, as expressed by David I. Felsenthal in his testimony, so that he would have full control and so he would know just where his money went. Fox took fifty of the shares given to him in his own name and took the other twenty-five shares in the name of Nate I. Silver, his brother-in-law, who, so far as the record shows, paid nothing for the stock taken in his name. About January, 1912, another inventory of the property of appellant was made. On February 20, 1912, David I. Felsenthal and Harry Felsenthal became connected with B. Cohen & Sons, of Chicago, who were also engaged in the tailors' clippings business, and ceased their active connection with the business of appellant but continued to be officers of appellant. Shortly before that, D. I. Felsenthal spoke to Fox about going in business with Cohen & Sons, and proposed to Fox that they close up the business of appellant and sell out the material and stock and pay Fox the money owed him by appellant, and told him that he thought that Cohen & Sons would pay him whatever the stock was worth; that he (Fox) could get his money out of the concern and that they could divide up what was left. Fox said that he liked the business and wanted to stay in it; that he had no objection to David and his brother going with Cohen & Sons, but wanted further guaranty of them that he would get his money out of the business. He then required each of the Felsenthal brothers to give him their individual note for $15,000 and that each brother's note be signed by his wife and endorsed by the other brother, and in addition thereto he required each of said brothers to assign to him his profits in the business of Cohen & Sons. He also still held as security the seventy-five shares of capital stock in appellant held by the three Felsenthals. On March 7, 1912, about three or four o'clock A. M., the property of the appellant, consisting of loose and bailed tailors' clippings, was destroyed or dam-

aged by fire. At that time the total amount of insurance on the property of appellant, as found by the appraisers, was $31,500; the total cash value of the property $30,721.42; the total loss and damage $29,471.73; the amount of insurance carried by appellee $1500, and the amount claimed to be due from appellee on its policy to the appellant was $1403.42. The amount of sound value and loss and damage was determined by the appraisers largely from information gained from the books of appellant kept by it before the fire and shown to have been made up during the course of the business. The officers of appellant, at the time the fire occurred and for some time prior thereto, were: Morris L. Fox, president; Harry Felsenthal, vice-president; David I. Felsenthal, treasurer; and Nate I. Silver, secretary. Ben Silver, another brother-in-law of Fox, was shipping and receiving clerk and kept a record of the goods shipped by and to appellant.

Evidence was produced by appellee in support of its defense tending strongly to prove, in substance, that Morris L. Fox and David I. Felsenthal, about two months prior to the fire, went to the saloon of Moe Rosenberg, then at the corner of Franklin and VanBuren streets, Chicago, and from there went with Rosenberg into the restaurant adjoining the saloon and there had dinner. Fox and Felsenthal there told Rosenberg that they were going out of business and were planning to have a fire at their place. Fox had known Rosenberg from his early boyhood. Rosenberg told them that Ben Fink, who was in the saloon with him, was in the business of firing and destroying buildings and property insured. Rosenberg saw Fink for them and gave them his terms for firing the building and goods in question, to-wit, ten per cent of the amount of insurance that should be collected from the insurance company, $500 thereof to be paid in advance. They told Rosenberg they had $32,000 or $33,000 of insurance; that they had shipped out some of the stock but had not canceled any of the insurance, and that

they did not know whether any of the policies would hold. Rosenberg then told them he would take up the matter with Fink and have Fink take it up with Nathan Spira, an insurance adjuster, and who was at the fire when it occurred and afterwards appeared as a representative of appellant in adjusting the loss. The burning of the building was agreed to upon said terms and about ten days later Fox paid Rosenberg $500 advance deposit. Rosenberg afterwards took Fink to the premises of the appellant, and on looking them over Fink directed Rosenberg to buy and put into the premises seventy-five gallons of gasoline. On the afternoon of March 6, 1912, Rosenberg employed a man by the name of Machilinsky, who was an expressman, to buy the gasoline of Bartell Bros., on Plymouth court, and gave him $15 to pay for and deliver the gasoline at the premises of appellant. Accordingly, Machilinsky bought and delivered fifteen five-gallon cans of gasoline at the appellant's premises about six o'clock that evening, and Rosenberg assisted in unloading the gasoline and storing it in the building from the rear. Fox was at the building and was informed that the gasoline was there. Fink entered the building about one o'clock that morning, cut open the cans of gasoline, scattered the contents on the first and second floors and upon the bales of clips piled upon those floors, set a time fuse and left the building. The fuse ignited the gasoline, and a raging hot fire, accompanied by explosions, followed as a result of such ignition early in the morning of the same day.

Rosenberg and Fink were witnesses for appellee and testified to the above facts. Machilinsky corroborated them as to the buying of the gasoline and the delivery thereof to Rosenberg at the building. A number of the members of the fire department of Chicago further corroborated their evidence by testifying that they noted a strong odor of gasoline on the first and second floors of the building while assisting in the work of putting out the fire, and also that they found a number of gasoline cans in the building cut

open in a manner similar to the way in which Fink testified he had cut and left them. Fox and David I. Felsenthal denied *in toto* the testimony of Rosenberg and Fink and all knowledge of the delivery of gasoline at the building by Machilinsky and all manner of guilty knowledge of the intention of anyone to burn the building. Contradictory statements occurred in the testimony of Fox, Rosenberg and Fink, and much other evidence was introduced tending to impeach their testimony and showing clearly that Rosenberg and Fink were very bad characters.

The jury were warranted in finding that the building was destroyed at the instigation of Fox beyond all reasonable doubt, and that the loss by the fire was the loss of Fox himself, as every dollar of the insurance money recovered would ultimately be paid to Fox. This finding is further supported by the evidence of Fox and David I. Felsenthal, whose testimony showed that the corporation owed Fox $30,000 or more,—a sum greater than the total loss sustained by reason of the fire. By the affirmance of the judgment of the trial court by the Appellate Court that court necessarily found that the building was so destroyed and that Fox was substantially the entire owner of the goods destroyed, and the opinion of the Appellate Court so discloses. This court is therefore concluded on this appeal as to such finding.

It is true, as contended by appellant, that the general rule of law is that the willful burning of property by a stockholder in a corporation is not a defense against the collection of the insurance by the corporation, and that the corporation cannot be prevented from collecting the insurance because its agents willfully set fire to the property without the participation or authority of the corporation or of all of the stockholders of the corporation. When, however, the beneficial owner of practically all of the stock in a corporation, and who has the absolute management and control of its affairs and its property and is its president and a di-

rector, sets fire to the property of a corporation or causes it to be done, there is no sound reason to support the contention of appellant that the corporation should be allowed to recover on a policy for the destruction of the corporate property by a fire so occasioned. Every principle of insurance law and sound reasoning would seem to be against such contention.

This question does not appear to have been heretofore decided by this court. In *Kirkpatrick* v. *Allemannia Fire Ins. Co.* 92 N. Y. Supp. 466, the appellate division of the Supreme Court held, in substance, that a corporation could not recover on a state of facts very similar to those occurring in the record now before this court. The corporation insured was the Abbey Press, and the assignee of the corporation sued on the policy. The only issue litigated was as to the origin of the fire, the insurance company claiming that the fire was caused by the insured for the purpose of defrauding the insurance company. Carlos Martin was the president and Charles F. Rideal was treasurer of the insured corporation, the two owning all of the stock except a sufficient amount to qualify a book-keeper as secretary. Martin and Rideal, according to the claims of the insurance company, acting in conspiracy with and through the instrumentality of Max Hart, had the property insured and then caused the fire for the purpose of defrauding the insurance companies. The court submitted it to the jury to find for the insurance company only in case they found that the fire was purposely set, with the knowledge or approval of the officers of the Abbey Press. The Supreme Court found that the finding of the jury in favor of the insurance company was fully warranted, and approved as proper the following charge to the jury: "In weighing the testimony of Mr. Rideal you may consider that he may be deemed a biased and interested witness and one of the officers of the Abbey Press charged with conspiracy to defraud the insurance companies." On appeal the Court of Appeals of

New York affirmed the judgment of the Supreme Court. *Kirkpatrick* v. *Allemannia Ins. Co.* 184 N. Y. 546.

The circuit court of appeals of the United States for the third circuit· followed the case above cited, and held that there could be no recovery by the plaintiff ·corporation in the case before it where the verdict of the jury was practically equivalent to a finding that the plaintiff intentionally and fraudulently caused the fire or knowingly participated in an act of incendiarism upon the stock and fixtures destroyed. The actual facts found by the jury and by the circuit court of appeals were, that the business of the plaintiff corporation was on the decline to a marked degree; that the lease had nearly expired and the landlord was unwilling to extend it; that the property was insured in excess of its value; that the plaintiff company was a family corporation; that the business was really George W. Meily's and was carried on in corporate form as a cloak to shield it from his creditors; that the fire was caused by his incendiary act, and that the participation by his sons in the alleged over-valuation of the stock afforded ground from which the jury could infer their acquiescence in the alleged incendiarism. *Meily Co.* v. *London and Lancashire Fire Ins. Co.* 148 Fed. Rep. 683.

In the case at bar it is strenuously claimed by appellant, on behalf of Nate I. Silver and Isaac Felsenthal, that there was absolutely nothing in the record that tended to show in any way that they participated or acquiesced in the burning of the property in question or had any guilty knowledge of such incendiarism. While that is true, as has already been stated, the court and jury were well warranted in finding that the twenty-five shares in the name of Silver in fact belonged to Morris L. Fox and were only held in the name of Silver for Fox's use and benefit and to qualify Silver to hold an office in the corporation. The stock of Isaac Felsenthal was assigned to Fox to secure him for the debt owed him by the corporation, which exceeded the total in-

surance collectible, according to the finding of the appraisers and according to the contention of appellant. Even if Silver and Isaac Felsenthal are, as contended by appellant, the legal owners of fifty shares of the corporation stock, under the evidence in this record neither of them would receive or be benefited by one cent of the insurance money collected, as the debts of the corporation would have to be first paid out of the insurance money, and Fox is the sole creditor of the corporation, is the assignee of all of the other stock in the corporation that he does not actually own, and was, in fact, the equitable owner of all of the property of the corporation and is the only person who will be benefited financially by the fire. It certainly cannot be said that a corporation can recover on a fire insurance policy where the property insured is destroyed by a fire at the instance of all of the stockholders and of all of the creditors of the corporation. That is substantially the fact found by the jury as disclosed by this record, as Fox is sole creditor and equitable owner, and the trial court held, and so instructed the jury, that the charge of incendiarism must be proved beyond a reasonable doubt. Fox, then, was really to be considered, when examined as a witness, the same as if he were the insured. The same latitude in cross-examination of Fox was permitted in this case by the trial court as if he were the insured. The court committed no error in so doing. The same latitude of cross-examination was also permissible in the case of David I. Felsenthal, who, according to the evidence, was an interested witness and had assisted in causing the property to be burned. His interest was disclosed by the fact that should Fox not collect all of his debt against the corporation out of the insurance money Felsenthal would still be indebted to Fox. The cross-examination of a witness who is a party in interest need not be confined to the subject matter of examination in chief. *Brennen* v. *Chicago and Carterville Coal Co.* 241 Ill. 610.

We have examined the instructions of the court carefully and find that they are all substantially correct. The court instructed the jury, in substance, that the provisions of the policy in question rendering it void if gasoline be kept, used or allowed on the premises is not violated by the mere bringing of gasoline on the property; that the words "kept, used or allowed" mean that the prohibited article must not only be upon the premises but must be there for the keeping or storing of it; that there must be some degree of permanence in its continuance there. As to the second defense the court instructed the jury that the charge was a criminal charge and must be proved beyond a reasonable doubt; "that a corporation is not bound by the fraudulent acts of one of its officers when he is not acting for and in the interest of the corporation but is acting in his own individual interest and against the interest of the corporation, and with the intention that his acts shall be done for the individual purpose of carrying out a willful and malicious criminal intent to destroy the property of the corporation. If, however, the officer or officers of a corporation are the owners of the stock and control it as its managers, and if such officer or officers should set fire to the property insured or cause or consent to the same being done, it would in law be the act of the corporation and will defeat a recovery on the part of the insured for any loss sustained under such circumstances." The foregoing instructions substantially embody the law applicable to the case, and they are not subject to the objections raised by appellant. They are certainly as favorable to appellant as is permissible under the law applicable to the case.

The record is not entirely free from error, but whatever error was disclosed was not of a prejudicial nature. The whole case necessarily turned upon the proposition whether or not appellee proved its second defense, as that is the defense, as is clearly disclosed by the record, upon which the jury made its finding against appellant.

One of the errors complained of by appellant as being substantial is the ruling of the court in not permitting appellant to prove that there were good and collectible debts due and owing the corporation at the time of the fire. It is true that such evidence would have tended to prove the solvency of the appellant. In considering this objection we must assume as true that if the evidence had been admitted appellant would have been able to prove its solvency. It is a sufficient answer to appellant's objection to say that if the appellant corporation is solvent and that there are large amounts of debts due and owing to it very much in excess of the amount owed to Fox, its sole creditor, Fox cannot defeat or prejudice the other stockholders who were not guilty of incendiarism or the encouragement thereof, in obtaining all their just interests or shares in the assets of the corporation. Fox's debt against the corporation may be offset entirely by any proceeding by or against the other stockholders to the extent of the full value of the goods destroyed or damaged by the fire, and they could even recover against him for any excess of the goods destroyed or damaged if they could show that such loss and damage exceeded the amount of his debt against appellant. No matter from what angle this case may be viewed, to allow appellant to recover in this case would be to go against the established rule of law that the assured may not profit by his own criminal act, which is at the same time an act committed with a criminal intent to defraud the insurance company. While the money collected from appellee on this insurance policy would not be paid directly to Fox, still, ultimately, the amount collected would all go, under the showing in this record, in the settlement of the affairs of the corporation to Fox. It is therefore certainly good law to hold that an incendiary cannot by a circuity of action recover from an insurance company a loss occasioned by his own willful conduct, which loss he could not recover by a direct suit against the company on a policy made direct to him. We

284 — 23

cannot allow the corporation in this case to be used as a cloak to protect Fox and to aid him in his designs to defraud the insurance company and at the same time to profit by his own wrong or fraud.

Under our view of this case appellant could not reasonably expect on another trial another or different verdict. We are impressed by the record that the verdict and judgment are clearly right and that the judgment should be affirmed, and it is accordingly affirmed.

*Judgment affirmed.*