MINNIE SAIKIN, Plaintiff and Counterdefendant-Appellee, v. NEW YORK LIFE INSURANCE COMPANY, Defendant-Counterplaintiff-Third-Party Plaintiff-Appellant.—(SAMUEL D. SAIKIN *et al.*, Third-Party Defendants-Appellees.)

First District (2nd Division)   No. 61775

Opinion filed January 25, 1977.

John D. Donlevy and Daniel B. Pinkert, both of Chicago (Mayer, Brown & Platt, of counsel), for appellant.

Stone, Pogrund & Korey, of Chicago (Bertram A. Stone, of counsel), for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Minnie Saikin, plaintiff, was the owner of four life insurance policies issued by the New York Life Insurance Company (New York Life), the defendant. New York Life made cash advances of $9243 on the basis of four applications for advances under forged signatures of Minnie Saikin apparently by her husband, Samuel Saikin. Minnie Saikin was a partner with Samuel Saikin and with her sons, Bertram, Leslie and Joel, d/b/a Biological Research Products Co. (Biological). The cash advances were sent to Minnie Saikin at an address which was the same address as the business address of Biological. These checks were deposited with forged endorsements in Biological's checking account.

Minnie Saikin filed suit against New York Life asking that the loans be declared null and void and sought to have the policies reinstated. She was successful in her suit and this appeal by New York Life follows.

New York Life filed counterclaims and third-party actions against Minnie Saikin, Samuel Saikin, Bertram Saikin, Leslie Saikin and Biological Research Products Co. New York Life's actions were based on certain sections of the partnership act and also on a claim of unjust enrichment. Joel Saikin was not named in the suit and Leslie Saikin was not served. Judgment was entered in favor of Minnie Saikin, Bertram Saikin and Biological and against New York Life on these counts. New York Life also appeals from that judgment. The record does not reveal the disposition of the action of New York Life under these theories against Samuel Saikin.

There was also a claim by New York Life against Samuel Saikin based on the forgeries of the applications and endorsements for which it received a judgment. There is no appeal from that judgment.

On December 31, 1965, Minnie Saikin entered into a partnership agreement with her husband, Samuel Saikin and her sons, Bertram, Leslie and Joel in a partnership known as Biological Research Products Co. Prior to that agreement, Minnie had operated this business with her husband

for at least 15 years. The partnership was engaged in the preparation of anatomical and embryological specimens for use in schools and colleges. Minnie Saikin took an active part in the business management of Biological until at least June 12, 1970. She was in charge of the bookkeeping while her husband handled production. From the inception of the partnership both Minnie Saikin and Samuel Saikin were signatories on the partnership bank account at the East Side Bank in Chicago and both had authority to borrow money for the partnership.

On June 12, 1970, at the office of Biological, Samuel Saikin handed Minnie Saikin four application forms for cash advances against the policies and asked her to sign them. Minnie Saikin did not do so and consulted her attorney. She never did file any document with New York Life or any of its agents that would authorize New York Life to honor any signature other than her own. Although Minnie Saikin did not remember at trial any discussions with her husband relating to the reason why he wanted her to obtain cash advances on her policies, she answered an interrogatory that Samuel Saikin needed the money allegedly for Biological. In 1967 at the request of Samuel Saikin, Minnie Saikin did borrow on the policies and lent it to the partnership. She did not know if the money was repaid.

On June 25, 1970, New York Life received four applications for cash advances with a transmittal letter on the stationery of Biological. Both the letter and the applications contained the purported signature of Minnie Saikin. When the money was deposited in the account of Biological there was a balance of slightly over $900. Two weeks after the checks were deposited the Biological checking balance was $69.11. Minnie Saikin contends that the checks issued from that account were for both partnership and personal debts of Samuel Saikin. The only personal debt alleged is to an attorney for $1000. That attorney testified that he had performed legal services for the partnership and for Samuel Saikin, personally, but was unable to ascertain which client owed the $1000 fee.

We will first consider the counterclaims and third-party claims of New York Life. New York Life contends that it was entitled to a judgment against Biological, Bertram and Minnie Saikin under sections 13, 14 and 15 of the Uniform Partnership Act (Ill. Rev. Stat. 1969, ch. 106½, pars. 13, 14 and 15). Those sections provide:

> " §13. Where, by any wrongful act or omission of any partner *acting in the ordinary course of the business of the partnership,* or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." (Emphasis added.)

" §14. The partnership is bound to make good the loss:

(a) Where one partner *acting within the scope of his apparent authority* receives money or property of a third person and misapplies it; and

(b) Where the partnership *in the course of its business* receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership." (Emphasis added.)

" § 15. All partners are liable

(a) Jointly and severally for everything chargeable to the partnership under Sections 13 and 14.

(b) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."

New York Life contends that the evidence reflects that Samuel Saikin was acting in the ordinary course of Biological's business pursuant to section 13 when he fraudulently obtained the money. New York Life states the test for determining whether a wrongful act is committed in the ordinary course of partnership business is whether the partner when performing the wrongful act was seeking to accomplish some purpose illegally, which was within the general scope of his duty and authority to accomplish lawfully. In support of its position New York Life cites *Gearhart v. Angeloff* (1969), 17 Ohio App. 2d 143, 244 N.E.2d 802, which held that the partnership which operated a tavern was liable for the intentional tort of a partner who shot a customer while attempting to quell a disturbance inasmuch as maintenance of order in the bar furthered the tavern's business. It also cites *Ray v. Dyer* (Tex. Civ. App. 1929), 20 S.W.2d 328, where the court found that one partner was responsible for the conduct of another partner who assaulted a trespasser on the partnership property. The court stated that "if, in the performance of his duties, he adopted a method which the law does not sanction, and if, in the pursuance of his illegal method, injuries resulted for the plaintiff, the partners were liable."

New York Life's chief reliance however, appears to be based on the case of *Durant v. Rogers* (1877), 87 Ill. 508. In *Durant* a surety sued Durant who was a partner of Davis, Sprague & Company for money the surety allegedly paid in behalf of the partnership on an appeal bond in a tort action brought against the partnership in Wyoming. One issue on appeal was whether Durant was liable for a judgment entered against the partnership in the Wyoming suit, which involved the tortious taking of oxen belonging to a third party by Durant's partners, Davis and Sprague. The supreme court held that Durant was liable for the intentional tort of his partners because the property taken was used by the partnership and,

when sold, the proceeds of the sale swelled the assets of the partnership. In *Durant* the partnership used the oxen and finally sold them.

Counterdefendant and third-party defendants do not comment on the *Durant* case, but argue that the trial court properly relied on *Sitter v. Karraker* (1901), 100 Ill. App. 669. They assert that in that case one of the partners took trust funds and deposited the funds in the partnership account without the knowledge of the co-partner. We believe that is an inaccurate summary of the case. In *Sitter* the partner deposited money received in trust in his own personal checking account. The only connection with the partnership there was that the checking account was in the bank that the partnership owned. There is nothing to indicate that the money from that checking account was used at all for the partnership purposes. There is nothing to suggest that the partner was acting in any way to further the partnership business when he took this money he held in trust and placed it in that account.

■■ In the instant case, Samuel Saikin used those funds which Biological urgently needed for partnership purposes. We believe that the evidence demonstrates that the acquisition of these funds was a wrongful act of the partner but that the partner was acting in the ordinary course of his partnership business and consequently the trial court was in error in denying New York Life recovery against Minnie Saikin, Bertram Saikin and Biological.

■■ New York Life also asks that the judgment in favor of Minnie Saikin and against New York Life on her original action against New York Life be reversed because it asserts even if an insurance company pays the proceeds of a policy to the wrong person if the person entitled to the funds obtains the benefit of those proceeds that person is estopped from seeking to obtain payment under the policy. Cited is the case of *Becker v. Illinois Life Insurance Co.* (1924), 227 Mich. 388, 198 N.W. 884, where Emma Becker fraudulently induced the company to delete Ida Becker as the named beneficiary. In a suit by Ida Becker the court found that Ida Becker had received the benefit of certain proceeds. Minnie Saikin says that the facts of the *Becker* case differ in that there the funds deposited inured to the benefit of the plaintiff. Here, Minnie Saikin argues, the partnership was defunct; partnership funds were used to pay his own personal attorney's fees; funds were paid to others which defendant assumed were all creditors of the partnership although unproven; and defendant failed to establish what part, if any, inured to plaintiff's benefit. We believe the evidence amply demonstrates that the partnership was a going concern and even if it were not a partner is still liable for partnership debts. The only disputed partnership expense concerns the attorney's fees and the testimony there shows that the attorney to whom the fees were paid did work for the partnership for which fees were

owed. We believe the record shows that the plaintiff, as a partner in Biological, received the benefits of the funds wrongfully obtained from New York Life.

Judgment in favor of plaintiff, Minnie Saikin and against defendant New York Life is reversed. Although as we have indicated New York Life is entitled to relief on both its complaint and counter and third-party complaints it does not seek judgment on the latter complaints in light of the ruling on the former. Consequently, the judgments in favor of counterdefendant and third-party defendants Minnie Saikin, Bertram Saikin and Biological and against New York Life are vacated.

Reversed in part; vacated in part.

DOWNING, P. J., and STAMOS, J., concur.