COURTS OF THE PHOENIX, a partnership, William Reich, general partner, Maynard M. Garfield, Fred Savino, Leslie M. Taitel, Adrienne Kaplan, Phoenix-Sheffield Courts, Salvatore S. Aiello, Charlotte A. Smith, Eddy Yuen, Spencer Trust, Howard C. Alper, Richard Drammer, Allen Drammer, Richard H. Driehaus, Jacqueline Rock, Bertha Kutchins, Franz Altschuler, Charles Callahan, Carol Callahan, Max Detrixhe, Joseph Kritzman, Patricia A. Kritzman, Dick A. Stoken, Skyblue Partnership, Marion E. Glazebrook, Allen Kutchins, limited partners, and Lakeview Trust & Savings Bank, as trustee under trust No. 4156, Plaintiffs,

v.

The CHARTER OAK FIRE INSURANCE CO., Defendant.

No. 81 C 2395.

United States District Court,
N.D. Illinois, E.D.

April 12, 1983.

Marvin Glassman, Rabens, Formusa & Glassman, Ltd., Chicago, Ill., for plaintiffs.

William J. Sneckenberg, Lev & Sneckenberg, Chicago, for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This is an action by The Court of the Phoenix ("the partnership"), a partnership, and Lakeview Trust & Savings Bank ("Lakeview Bank"), the legal title holder of the building operated by the partnership, against Charter Oak Fire Insurance Company ("Charter Oak") on a fire insurance policy issued by Charter Oak. In May 1980, a fire occurred in the partnership's building, which housed several racquetball and handball courts. The Chicago Fire Department later determined that the fire had been intentionally set. Charter Oak denied the partnership's claim on the insurance policy on the basis that William Reich ("Reich"), the partnership's general partner, had set the fire or had arranged for it to be set in order to liquidate what Charter Oak claims was a failing investment. Charter Oak has raised other defenses to payment as well,

including the alleged submission by the partnership of inflated damage claims and the partnership's failure to prevent the building from deteriorating.

At a pretrial conference held on February 8, 1983, it became clear that the parties were in conflict over the applicability of what we will term the "arson defense," that is, the defense that Reich had procured the setting of the fire. The parties had addressed this question in their trial briefs, which they had filed on December 17, 1982. At the February pretrial conference, we told the parties that to the extent that the issue of the sufficiency of this defense was a question of law, we would rule on it before trial.

The facts now before us are as follows. Reich was the general partner of the partnership,[1] and the other named plaintiffs, with the exception of Lakeview Bank, were limited partners. None of the limited partners has greater than a 6% interest in the partnership. Reich had the majority interest (over 50%). Defendant has alleged that as general partner, Reich had sole control over the operation and management of the racquetball-handball club. For the purpose of the present inquiry, because we are only determining the sufficiency of the arson defense, we will assume the validity of defendant's assertion.

The case is before us by reason of the diversity of citizenship of the parties. *See* 28 U.S.C. § 1332(a) (1976). Under *Klaxon v. Stentor Electrical Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), therefore, we must look to the choice of law rules of the forum state, here Illinois. The general rule in Illinois is that the construction of a contract of insurance is governed by the place of execution of the contract. *See Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.,* 508 F.2d 417, 419 (7th Cir.1975) (applying Illinois choice of law rules). The place of execution

is defined as the place where the last act is done that is necessary to make the contract binding, for example, delivery to the insured. *See Gray v. Penn Mutual Life Insurance Co.,* 5 Ill.App.2d 541, 126 N.E.2d 409 (1955); *Hartliep Transit Co. v. Central Mutual Insurance Co.,* 288 Ill.App. 140, 5 N.E.2d 879 (1937). While we do not doubt that the place of execution is capable of determination in the present case, the parties have not indicated where the contract in question here was executed. In any case, the parties appear to agree that Illinois law applies. Therefore, for the purposes of the present inquiry, we will apply Illinois law.[2]

There are no Illinois cases that address the specific question at issue here, that is, whether a "limited partnership" can be denied recovery on a fire insurance policy where the partnership's sole general partner has procured the setting of the fire that gave rise to the claim on the policy. The parties agree that the Illinois case that states the general common law rules applicable here is *D.I. Felsenthal Co. v. Northern Assurance Co., Ltd.,* 284 Ill. 343, 120 N.E. 268 (1918). In *Felsenthal,* the plaintiff, a corporation, brought suit on a fire insurance policy issued by the defendant. The defendant responded by alleging that the fire had been set by or at the behest of a major stockholder in the corporation. At the time of the fire, there were 150 shares of stock outstanding. Fifty shares were held directly by Fox, the alleged instigator of the fire. Another 25 were held by Fox's brother-in-law, but in fact those shares were held for Fox's use and benefit and were in the brother-in-law's name only in order to qualify him to hold an office in the corporation. The other 75 shares were held by three other persons, but all were assigned to Fox as security for debts owed to the corporation. In addition, Fox was the corporation's sole creditor. The court found that he was the only person who would be benefitted

---

1. We speak of Mr. Reich in the past tense because he is deceased.

2. Section 193 of the Restatement (Second) of Conflict of Laws provides that a contract of fire or casualty insurance is to be governed by the

law of the state in which the insured risk is located, here Illinois. Restatement (Second) of Conflict of Laws § 193 (1971). However, we have found no Illinois cases that either accept or reject this rule.

financially by the fire, as any amounts that would go to the other shareholders would be subject to being set off against their debts to the corporation. In addition, Fox had absolute control of the corporation's affairs. The court in *Felsenthal* stated that

> the general rule of law is that the willful burning of property by a stockholder in a corporation is not a defense against the collection of the insurance by the corporation, and [ ] the corporation cannot be prevented from collecting the insurance because its agents willfully set fire to the property without the participation or authority of the corporation or of all of the stockholders of the corporation.

*Id.* at 348, 120 N.E. at 270. However, the court went on to state that

> [w]hen ... the beneficial owner of practically all of the stock in a corporation, ... who has the absolute management and control of its affairs and its property and is its president and a director, sets fire to the property of a corporation or causes it to be done, there is no sound reason to support the contention ... that the corporation should be allowed to recover on a policy for the destruction of the corporate property by a fire so occasioned.

*Id.* at 348–49, 120 N.E. at 270. The court noted that in the circumstances presented, allowing the corporation to recover would be in effect indistinguishable from allowing an individual insured under a fire insurance policy to recover despite having set the fire, as Fox was the sole person who would benefit from the recovery demanded. *Id.* at 353, 120 N.E. at 272. It stated: "[w]e cannot allow the corporation in this case to be used as a cloak to protect Fox and to aid him in his design to defraud the insurance company and at the same time to profit by his own wrong." *Id.* at 354, 120 N.E. at 272.

A more recent Illinois case, *Economy Fire & Casualty Co. v. Warren,* 71 Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979), is, we think, also instructive. In *Economy Fire,* the insurer brought an action against two joint tenants of property covered by a fire insurance policy, seeking rescission of a settlement agreement and restitution of proceeds paid out under the policy. The evidence showed that one of the joint tenants had started the fire that had resulted in the claim. The other joint tenant contended that he was innocent of wrongdoing and therefore was entitled to half of the proceeds from the policy, regardless of the other joint tenant's conduct. The insurer argued that the arson of one joint tenant voided the entire policy.

In reaching its decision, the court in *Economy Fire* considered two divergent lines of authority from other jurisdictions, as the issue was one of first impression in Illinois. The first line of cases considered stood for the proposition that the question whether the rights of obligees are joint and several is one which is to be determined by what a reasonable person in the position of the insured would have understood the words of the policy to mean. An ordinary person with an undivided interest in the property would naturally suppose that his individual interest was covered by a policy that named him as an insured and that his rights were not tied to those of the other joint tenant. *Economy Fire,* 71 Ill.App.3d at 628, 28 Ill.Dec. at 196, 390 N.E.2d at 363.[3] The second line of authority considered in *Economy Fire* held that the wrongdoing of one co-insured bars recovery as to all insured, because the agreement of the insureds not to commit fraud is joint, with each promising that he and the other will not commit fraud. *Id.* at 628–29, 28 Ill.Dec. at 196, 390 N.E.2d at 363.

---

**3.** One of the cases cited to support this proposition was *Mercantile Trust Co. v. New York Underwriters Ins. Co.,* 376 F.2d 502 (7th Cir. 1967), in which the court, applying what it considered to be Illinois law, held that the fraud of a life tenant of insured property did not bar recovery on an insurance policy by the trustee, who was also insured. The court in *Mercantile Trust* relied in part on an old Illinois case, *Westchester Fire Insurance Co. v. Foster,* 90 Ill. 121 (1878), in which the court held that a mortgagee's right to recover on an insurance policy was not defeated by the wrongful acts of the mortgagor.

The court in *Economy Fire* sided with the innocent insured, holding that the fact that his joint tenant had committed arson should not bar him from recovery on the policy. It stated: "[w]e do not think that the reasonable person in the position of [defendant] would have supposed that the wrongdoing of his co-insured would be imputed to him. If the plaintiff intended such a result, it should have made the terms of the policy more express in that regard." *Id.* 71 Ill. App.3d at 629, 28 Ill.Dec. at 196–97, 390 N.E.2d at 363–64. Thus, the court held that the innocent joint tenant was entitled to retain one-half of the proceeds from the insurance policy.

█ *Economy Fire* and *Felsenthal* represent the extent of Illinois common law doctrine directly pertinent to the issue of insurance law at hand. However, on the more general issue—whether the wrongful conduct of one partner may be imputed to another partner—both common law and statutory law exists. As a matter of Illinois law, the tortious or fraudulent wrongdoing of one partner, not within the scope of his authority or in furtherance of the partnership business, does not subject the other partners (or the partnership) to liability. *Saikin v. New York Life Insurance Co.,* 45 Ill.App.3d 1019, 4 Ill.Dec. 477, 360 N.E.2d 413 (1977).[4] This doctrine is also embodied in an Illinois statute. Section 13 of the Uniform Partnership Act, upon which the court relied in *Saikin,* provides that

> [w]here, by any wrongful act or omission of any partner acting in the ordinary course of business of the partnership, or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

Ill.Rev.Stat. ch. 106½, § 13 (1981). Section 15(a) of the Act provides that all partners are jointly and severally liable for everything chargeable to the partnership under section 13. Ill.Rev.Stat. ch. 106½, § 15(a) (1981). The Act also provides that its provisions "shall apply to limited partnerships except in so far as the statutes relating to such partnerships are inconsistent [with the Uniform Partnership Act]." Ill.Rev.Stat. ch. 106½, § 6(2) (1981).

█ Illinois' version of the Uniform Limited Partnership Act is found at Ill.Rev. Stat. ch. 106½, §§ 44–73 (1981). Section 44 of the Act, *id.* § 44, provides that a limited partner shall not be personally bound—that is, for any amounts in excess of his or her contribution to capital—by the obligations of the partnership. Section 44 is inconsistent with § 15(a) of the Uniform Partnership Act, and thus under § 6(2), § 44 controls where a limited partnership is concerned. However, there is nothing in the Limited Partnership Act that is inconsistent with § 13 of the Partnership Act, and therefore § 13 applies to limited partnerships as well as to "ordinary" partnerships. While § 13, taken literally, addressed only the *liability* of partnerships, we think that it provides persuasive authority for the proposition that the legislature intended that responsibility for the wrongful acts of one partner, even the general partner, is not to be attributed to other partners unless those acts are in the ordinary course of the partnership business or are undertaken with the express or implied authority of the other partners. *See Saikin. Felsenthal* is not to the contrary, at least not in the present context. In that case, the court made it clear that its decision was based primarily on the fact that the wrongdoer would have been the sole beneficiary of the insurance policy, and thus of his own wrongdoing, if recovery were allowed. In the present case, there are, by contrast, many "innocent bystanders." We do not think that the holding in *Felsenthal* controls here.

The same is true of *Economy Fire. See generally Lamb v. Briggs Manufacturing,* 700 F.2d 1092 (7th Cir.1983).

---

**4.** Although *Saikin* is not an Illinois Supreme Court decision, we find it persuasive and believe that the supreme court, if faced with the issue, would arrive at the same conclusion.

■ Our determination that *Saikin* and § 13 of the Uniform Partnership Act state the applicable rule raises two important questions. First, we must decide whether Reich's alleged acts were either within the course of business of the partnership or were done with the authority of the other partners. Second, if we determine that Reich's acts were outside of his authority and thus are not attributable to the limited partners, we must address the question whether the insurance contract here modified the common law and statutory rule.

We do not have before us the partnership agreement entered into among the limited partners and Reich. However, this does not prevent us from determining whether burning down the partnership's sole property was something that could be considered to have been done in the ordinary course of the partnership's business. Section 52 of the Uniform Limited Partnership Act provides that absent the written consent or subsequent ratification of all the limited partners, a general partner does not have the authority to "[d]o any act which would make it impossible to carry on the ordinary business of the partnership". Ill.Rev.Stat. ch. 106½, § 52(1)(b) (1981). It is not alleged that there was any such consent here. Moreover, we would find it somewhat incongruous were the law to provide that an act taken to destroy a business' sole asset is an act "in the ordinary course of business." We are not so naive as to ignore the fact that business people, faced with a perceived need to liquidate a failing investment quickly, sometimes undertake unlawful acts such as arson in order to realize a return of their investment. However, we do not think that such an act may be considered to be within the ordinary course of their business, at least where one is concerned with the issue whether their conduct may be attributed to their innocent partners.

*Saikin* supports this result. In *Saikin*, it was alleged that one of several partners had forged the indorsement of another partner on checks made out to the other partner by her life insurance company.

The forger had deposited the funds in the partnership's account and then had used them to pay debts of the partnership. The court thus found, unsurprisingly, that despite the illegality of the act of forgery, the ultimate aim of the scheme was to accomplish, albeit illegally, a purpose that was within the scope of the forger's duty and authority as a partner to accomplish lawfully. *Saikin,* 45 Ill.App.3d at 1023, 4 Ill.Dec. at 479–80, 360 N.E.2d at 415–16. Based on the court's discussion in *Saikin* (which primarily concerned decisions from other jurisdictions, given the lack of Illinois law on point), the standard appears to be whether the ultimate purpose of the malfeasant partner's actions was within the scope of his authority and/or the ordinary course of business of the partnership. We cannot say that Reich's alleged conduct meets that test.

The question becomes, therefore, whether the insurance contract here modified in any way the statutory and common law doctrine that the wrongdoing of one partner not within the scope of his authority or in furtherance of the partnership's business is not attributable to the other partners. The insurance contract is attached to plaintiff's complaint. It provides that Charter Oak "insures against all risks of direct or physical loss or damages except as otherwise provided in this form and any other provisions of the policy which apply." Building and Personal Property Special Form, § 1.A. The most general exclusion of potential relevance here provides that

[t]he Company shall not be liable for loss occurring while the hazard is increased by any means within the control or knowledge of the Insured unless the Company has received prior written notice. However, except as otherwise provided, permission is granted to make alterations and repairs.

Building and Personal Property Special Form, § 1.I.1. Other than this, we can find no provision specifically excluding coverage as to damage to the building due to the

fraud or criminal acts of an insured.[5] The same is true concerning the "business interruption" coverage. There is, however, a provision relating to personal property. It states:

> D. PERILS EXCLUDED OR SUBJECT TO LIMITATIONS—
> This form does not insure against loss or damage:
>
> *     *     *     *     *     *
>
> 3. TO PERSONAL PROPERTY
>
> *     *     *     *     *     *
>
> h. due to:
> (1) any fraudulent, dishonest or criminal act or omission done by or at the instigation of any Insured, partner or joint adventurer in or of any Insured, an officer, director, or trustee of any Insured . . . .

Building and Personal Property Special Form, § 1.D.3.h(1). Under *Economy Fire,* only the provision relating to personal property is explicit enough to subject the limited partners to responsibility for the wrongful acts of the general partner. Therefore, the limited partners cannot be barred from recovery as to the "business interruption" and "building" claims, which amount to all but $50,000 of plaintiffs' $1.7 million-plus claim.[6] If Charter Oak can demonstrate that any of the limited partners expressly or impliedly authorized Reich's conduct, however, any such partner may be barred from recovery as well. Reich will, of course, be barred from any recovery if Charter Oak can demonstrate by a preponderance of the evidence, *Werner's Furniture, Inc. v. Commercial Union Insurance Co.,* 39 Ill.App.3d 59, 349 N.E.2d 616 (1976), that he set the fire or procured its setting.

The result we reach is that the total amount that would be due on the policy absent Reich's alleged arson is to be reduced by a percentage that equals the percentage of the partnership owned by the wrongdoers, if any. The innocent partners may recover the balance in proportion with their interest in the partnership. This result is permitted by *Economy Fire,* in which the total amount due under the policy was apportioned between the innocent joint tenant and the arsonist. It is also the result that we believe the Illinois Supreme Court would reach if faced with the issue.

The pretrial conference scheduled for April 28, 1983 will stand.

---

5. Perhaps Charter Oak relies for its exclusion on the common law doctrine that an insured cannot benefit by reason of his own wrongdoing, regardless of what the policy says. *See Felsenthal.* If this is the case, however, Charter Oak is clearly subject to the common law and statutory rule discussed *supra* that the actions of one partner such as are alleged to have occurred here are not attributable to the other partners.

6. The fact that the 25 limited partners are not individually named in the insurance policy is, we think, of little consequence. The general partner, Reich, is named separately from the partnership, and thus as in *Economy Fire,* we think that a limited partner who read the policy would assume, in the absence of a specific provision in the policy to the contrary, that Reich's conduct would not be attributed to the other members of the partnership.