William Dean ROGERS and Patricia Lee Rogers, his wife, Plaintiffs and Respondents,

v.

M.O. BITNER CO., Blaine B. Bitner, Westcor, Inc., a Utah corporation, Richard Johns, II, Douglas Monson, Dee Murphy, Alonzo Badger, Utah Security Mortgage, Bonneville Thrift Co., Royal K. Hunt, and John S. Davis, Defendants and Appellants.

Harold H. BENNETT, Defendant, Third-Party Plaintiff and Respondent,

v.

M.O. BITNER CO., Blaine B. Bitner, Westcor, Inc., Richard Johns, II, Douglas Monson, Dee Murphy, Alonzo Badger, Utah Security Mortgage, Bonneville Thrift Co., Royal K. Hunt, and John S. Davis, Third-Party Defendants and Appellants.

No. 19224.

Supreme Court of Utah.

June 15, 1987.

Raymond Hintze, Salt Lake City, for defendants and appellants.

Paul Belnap, Craig Cook, Salt Lake City, for cross-claimant and respondent.

George Sutton, Susan Pixton, Salt Lake City, for plaintiffs and respondents.

DURHAM, Justice:

M.O. Bitner Company (Bitner Company) appeals from a district court decision holding it liable to William and Patricia Rogers and Harold H. Bennett (Rogers and Bennett). The Rogers and Bennett claims are factually discrete and will be treated separately. An issue concerning the trial court's denial of a mistrial motion purportedly made by Bitner Company on the basis of a conflict of interest is common to both the Bennett's and Rogers' claims and will be treated in the final section of this opinion.

Bitner Company owned a plot of land near Park City that it desired to sell as subdivision lots. Bitner Company drew up plans and obtained preliminary approval from Summit County in February of 1978, subject to the filing of an escrow agreement guaranteeing the financing of the improvements by Bitner Company. After considering and rejecting a proposal for a joint venture with another party in November of 1978, Bitner Company entered into an agreement with Westcor, a planned corporation as yet unorganized whose promoter and incorporator was Douglas Monson.[1] After it entered the agreement with Westcor, Bitner Company signed an escrow agreement with Summit County guaranteeing the completion of the improvements by November 1980. No funds were ever deposited pursuant to the escrow agreement. Westcor then hired Bitner Excavation Co., which had as its principal Blaine Bitner, president of M.O. Bitner Company, to construct the improvements.

In 1980, Bitner Company and Westcor, prompted by a lawsuit brought by purchasers other than the Rogers, in which Westcor and Bitner were accused of improperly assigning contracts, entered into a trust agreement under which Bitner assumed sole liability for the subdivision and agreed to hold Westcor harmless if the improperly assigned contracts were reacquired; not all the contracts were retrieved.

*The Rogers' Claim*

Plaintiffs William and Patricia Rogers were shown two lots in the subdivision during January of 1979 by a real estate agent hired by Douglas Monson. The Rogers explained to the agent that they owned a contracting business and planned to build two homes that would later be sold at a profit. Plaintiffs were assured by the agent that the improvements would be installed by fall of 1979. In April 1979, plaintiffs purchased the lots, using a construction loan that came due in ten months. Plaintiffs planned to build the homes and sell them during the 1979–80 ski season. By the summer of 1979, it became apparent that the improvements would not be done by autumn; plaintiffs prepared the homes to withstand winter. As the January 1980 due date for the loan approached without completion of the improvements, plaintiffs barraged Westcor with calls and told Blaine Bitner (who was at this time making a desultory effort at installing the improvements in his role as an employee of Bitner Excavating) about the lack of improvements. Plaintiffs were assured the improvements would be made by November 1980 as provided by the escrow agreement with Summit County. Plaintiffs obtained a three-month extension of their loans in 1980. When the new due date arrived, plaintiffs were unable to pay anything but

---

**1.** The trial court determined that Westcor was never legally established and held Douglas Monson personally responsible for its liabilities.

the interest and were required by the lender to convert the construction loan to a thirty-year installment loan with payments of over $2,000 per month. Plaintiffs borrowed the funds to make these payments. Under increasing pressure from the lender and hoping, on the basis of Westcor's assurances, that the improvements would soon be completed, plaintiffs listed the homes with a real estate broker. Plaintiffs received offers on both homes for around $130,000 each, subject to the completion of the improvements. Plaintiffs independently arranged for the installation of gas and electricity, but the homes were still uninhabitable in November of 1980 because the roads were not paved and the water system was incomplete. Plaintiffs fell into arrears on the payments on their installment loan and were threatened with foreclosure. To preserve their credit rating, plaintiffs began negotiating with the potential buyers who had signed offers. Plaintiffs reached an agreement with the buyers under which plaintiffs drastically reduced the prices of the homes, and the buyers assumed the loans as of January 1, 1980, also assuming the risk that the improvements would not be completed. In January 1980, plaintiffs obtained an appraisal that put the value of the homes at $136,000 and $138,000, assuming installment of the improvements. The homes were sold for $105,419.95 and $106,689.00. The trial court found Bitner Company liable to the Rogers for the difference between the appraised value of the homes and the prices for which the homes were eventually sold.

Bitner Company assigns error on several grounds: it alleges that there was no substantial evidence upon which the trial judge could find Bitner and Westcor joint venturers; it insists that plaintiffs were not third-party beneficiaries of the agreement between Westcor and Bitner Company, or the agreement between Bitner Company and Summit County; and it challenges the method used by the trial court to calculate the plaintiffs' damages. Bitner Company also attacks a "joint venture by estoppel" theory that was not relied upon by the trial court and is therefore wholly irrelevant.

■ Bitner Company claims the trial court erred in finding that it and Westcor were joint venturers and it is therefore not liable to the Rogers. According to Bitner Company, it was only a seller of land and bears no responsibility for the failure of Westcor, the buyer, to make improvements. Bitner Company asks us to review the evidence and conclude that "as a matter of law," Bitner Company and Westcor were not joint venturers. Whether a joint venture exists is, however, a question of fact. In *Strand v. Cranney*, 607 P.2d 295, 296 (Utah 1980), we stated:

> Whether a joint venture exists is ordinarily a question of fact. On review of factual determinations, this Court will sustain a decision that is based on findings supported by substantial evidence, *Gibbons & Reed Co. v. Guthrie*, 123 Utah 172, 256 P.2d 706 (1953). The evidence is to be viewed in the light most favorable to the prevailing party. *Toomer's Estate v. Union Pacific Railroad Co.*, 121 Utah 37, 239 P.2d 163 (1951).

■ A joint venture does not always arise pursuant to formal agreement; rather, it is a relationship voluntarily entered by the parties and may be proven by the actions taken by the parties. The characterizations given by the parties are certainly not determinative of the issue. *Betenson v. Call Auto & Equipment Sales*, 645 P.2d 684, 686 (Utah 1982); *Lignell v. Berg*, 593 P.2d 800, 804 (Utah 1979).

> The requirements for the relationship are not exactly defined, but certain elements are essential: the parties must combine their property, money, effects, skill, labor and knowledge. As a general rule, there must be a community of interest in the performance of the common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.

*Basset v. Baker*, 530 P.2d 1, 2 (Utah 1974).

■ We have reviewed the evidence presented at trial and hold that the trial court's determination that Bitner Company

and Westcor were joint venturers is amply supported by the record.

The agreement entered into by Bitner Company and Westcor has terms not usually characteristic of a mere sale of land: the selling price was calculated on anticipated profits from the sale of developed lots rather than the value of the raw land; Bitner Company's principals were entitled to a "commission" on each lot they sold; Bitner Company was entitled to one-half of any savings if the improvements were constructed for less than the cost anticipated in the escrow agreement filed with Summit County; Bitner Company was entitled to 50 percent of the payments received for lots after closing costs and commissions were paid; and no interest or minimum payments were required of Westcor. Also, testimony at trial indicated that the land sale contract was used by Bitner Company's accountants for tax avoidance purposes.

Moreover, Bitner Company had a degree of participation in the venture that is inconsistent with its assertion that it only participated as a seller. Nine days after it "sold" the subdivision, Bitner Company signed an escrow agreement with Summit County guaranteeing the completion of the improvements. Bitner Company's principals had their phone numbers on promotional billboards and earned substantial amounts of money as commissions on lots they sold. Blaine Bitner, under the auspices of Bitner Excavating, made some efforts at installing the improvements, which were executed in accordance with a plan prepared by Bitner Company prior to any involvement with Westcor. Finally, we note that, until this appeal, Westcor and Bitner Company aligned themselves in all litigation concerning the development and never claimed against each other. Because we agree with the trial court that Westcor and Bitner Company were joint venturers, we need not consider whether plaintiffs are third-party beneficiaries of either the escrow agreement with Summit County or the 1980 trust agreement between Bitner Company and Westcor.

Bitner Company also assigns as error the method of damage calculation employed by the trial court. According to Bitner Company, the trial court should have based the damage calculation on the difference between the price set in the earnest money agreements and that ultimately received. The record indicates that the earnest money agreements were entered into after Bitner Company's failure to complete the improvements had already placed plaintiffs under substantial economic duress. The earnest money agreements represent an attempt to mitigate the damage caused by Bitner Company's breach. We agree with the trial court that Bitner Company should not benefit from its breach by having the plaintiffs' damages based on a forced sale undertaken to mitigate harm already suffered by plaintiffs. We also reject Bitner Company's attack on the appraisals considered by the trial court. Plaintiffs presented an appraiser with extensive appraisal experience in Summit County and professional certification from the Society of Real Estate Appraisers. The trial judge was within his discretion in accepting plaintiffs' expert's opinion of the value of the property. Utah R. Evid. 104(a); Utah R. Evid. 702; *see State v. Clayton*, 646 P.2d 723, 726 (Utah 1982) (trial judge has discretion to determine whether an expert is qualified; *Clayton* was decided before the adoption of Utah Rule of Evidence 702 but is in harmony with the principles underlying the new rules). We also note that Bitner Company failed to make an objection at trial and is barred from raising the issue first on appeal. Utah R. Evid. 103(a).

*The Bennett Claim*

Harold Bennett was originally made a party to this action because of his claim to one of the lots purchased by the Rogers. The trial court quieted title to the disputed lot in the Rogers; that decision has not been challenged on appeal. Bennett cross-claimed against Bitner Company alleging fraud in the assignment of certain real estate contracts to him.

Alonzo Badger, a defendant in the lower court who has not appealed the trial court's

default ruling against him, is an associate of Douglas Monson, principal of Westcor. Badger, as a result of a transaction not at issue here, owed Bennett approximately $81,000. In early August 1979, Monson and Badger approached Bennett and suggested an arrangement under which Bennett would loan Badger and Westcor an additional $50,000, which would be repaid by the assignment to Bennett of land sale contracts in the subdivision that Bitner Company and Westcor were developing. The land sale contracts were purportedly to be sold to a financial institution by Badger and Westcor for an amount sufficient to pay Bennett the $131,000 owed to him together with interest. According to Bennett, Monson told him that the contracts were "free and clear" but asked him not to record his interest in them because the contracts were going to be sold quickly by Monson and Badger. In reliance on these representations, Bennett advanced $50,000 to Westcor and did not record his interest. Included among the contracts assigned to Bennett was a contract purportedly representing money owed by William Rogers on Lot 29. Lot 29 had not, however, been sold to the Rogers. Other contracts in the group given to Bennett had already been assigned to a commercial institution. Monson and Badger then took the contracts assigned to Bennett and assigned them to other parties without the knowledge or consent of Bennett. Monson testified that the money obtained from Bennett was to be used to pay debts of the subdivision. The trial court determined that these activities constituted fraud against Bennett and awarded him judgment for compensatory and punitive damages and attorney fees against Bitner Company. The damages were awarded against Bitner Company on two theories: its status as a joint venturer with Westcor; and a determination that Bennett was a third-party beneficiary of the 1980 trust agreement entered by Bitner Company and Westcor.

■ For the reasons explained above, we agree with the trial court that Westcor and Bitner Company were joint venturers. Joint venturers stand in the same relationship to each other as partners. *Kemp v.*

*Murray,* 680 P.2d 758, 759 (Utah 1984). Principles governing the liability of one partner for a fraudulent assignment of partnership assets for the benefit of the partnership therefore apply.

Utah Code Ann. § 48–1–10 (1981) provides:

Where by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

■ We believe that the record supports the conclusion that Monson was acting in the ordinary course of the partnership business when he made the assignments to Bennett. The record indicates that Westcor and Bitner Company were sued before the commencement of this action because of an assignment of certain real estate contracts. The assignment resulted in a diversion of income from the land contracts to projects other than the installation of improvements in the subdivision. That action culminated with a trust agreement under which Bitner Company and Westcor agreed to use best efforts to reobtain certain real estate contracts previously assigned by Westcor by a designated date, after which Bitner Company would hold Westcor harmless. The contracts were apparently not retrieved, but the existence of the trust agreement and the apparent lack of effort to retrieve the assigned contract are indicative of Bitner Company's knowledge or consent to Westcor's assignment of the real estate contracts. We note that Blaine Bitner's construction company took contracts from Westcor as payment for the excavating work it did. We think it is too late for Bitner Company to disclaim connection with Westcor's assignment of contracts on the subdivision.

■ We also reject Bitner Company's argument that Utah Code Ann. § 48–1–6(3)(a) (1981), which forbids assignment of partnership property to creditors without the

agreement of all partners who have not abandoned the partnership business, renders them not liable to Bennett. This issue was not raised before the trial court and is not therefore properly before us on appeal. *See, e.g., Madsen v. Brown,* 701 P.2d 1086, 1088 (Utah 1985).

*Conflict of Interest*

█ Common to both the Rogers and Bennett claims is an issue concerning the ability of Bitner Company's counsel to represent himself, Bitner Company, and Westcor. Bitner Company assigns error based on the trial court's denial of Bitner Company's "repeated" motions for a mistrial because of the alleged conflict of interest. We have reviewed the record and find that no such motions were made. Bitner Company's counsel purported to make a motion under Utah Rule of Civil Procedure 63 to disqualify the judge. The basis for the motion was that the trial judge was biased against Bitner Company's counsel because the trial judge had inadvertently learned that Bitner Company's counsel was subject to bar proceedings that could result in the suspension of his license. We note that the motion made by Bitner Company's counsel was oral and therefore inherently defective because Rule 63 requires a party seeking to disqualify a judge to personally or by counsel "make and file an affidavit" stating the facts and the reasons why the party thinks the trial judge is biased. In support of the Rule 63 motion, which was made first on the second day of trial and later renewed, Bitner Company's counsel cited the "inference" of impropriety that could be drawn from his representation of himself, M.O. Bitner, and Westcor as an additional reason why the trial judge may have been biased against him. At no time did Bitner Company's counsel ask for a mistrial based on the purported conflict of interest. We cannot review the trial judge's ruling on a motion that was never made, and therefore, reject this claim of error.

The decision of the trial court is affirmed.

HALL, C.J., STEWART, Associate C.J., and HOWE, J., concur.

ZIMMERMAN, Justice (concurring):

I write separately to state my reasons for joining in the Court's finding that the fraudulent assignment of real estate contracts to Harold Bennett was part of the joint venture between Bitner Company and Westcor, thus making Bitner Company liable for losses flowing from those assignments. I think the majority's conclusory holding on this point glosses over significant factual and legal issues and fails to provide satisfactory guidelines for future litigants.

Bitner Company argues that the development of the Park City subdivision and the assignment of sales contracts are separate and distinct activities. It reasons, therefore, that even if it was involved in a joint venture with Westcor *to develop* the property, that venture did not include transactions intended *to finance* the installation of improvements. Bitner Company further claims that the conceded Monson-Badger partnership was the entity responsible for and benefitted by the fraudulent assignments. Moreover, Bitner Company points to its lack of participation in or knowledge of Monson and Badger's dealings with Bennett as additional support for its claim that it should not be liable for the damages resulting from those assignments.

I think that whether the Bitner Company-Westcor joint venture was broad enough in purpose to permit the imposition of vicarious liability on Bitner Company for the Monson-Badger dealings is a close question and one on which I might differ with the trial judge. It is, however, a question of fact, *Strand v. Cranney,* 607 P.2d 295, 296 (Utah 1980), and one that the district court resolved against Bitner Company. Rule 52(a) of the Utah Rules of Civil Procedure, which was amended in 1987, provides that on appeal, "[f]indings of fact … shall not be set aside unless clearly erroneous." Because I cannot say that the trial court's finding in this regard was clearly erroneous, I concur in upholding that finding.

The district court found that the uniform real estate contract and its attached exhib-

its and supplemental agreement demonstrate that Bitner Company and Westcor had a shared interest in developing the Park City property. Specifically, the court found that the sale price of the land was based on an anticipated share of profits from the sale of lots in the completed development; that the principals of Bitner Company and Westcor were permitted to sell lots and were entitled to a commission for any lots sold; that Westcor was responsible for arranging the financing for construction of the improvements; and that if it were able to do so for less than the estimated amount, then Bitner Company was entitled to receive one-half of the savings. A supplemental agreement which is part of the record on appeal indicates that Westcor was permitted to assign to Bitner Company contracts for the sale of lots to be credited as payments on the "sale price" of the land.

With regard to financing, the district court found that Harold Bennett previously had lent Alonzo Badger approximately $81,000 and that Monson and Badger were partners who had agreed to provide assistance to each other in the funding of Westcor. From the record, it appears that Badger and Monson agreed to split Monson's share of the profits from the Park City development. Apparently, Badger, who owned a mortgage company, arranged for a false certification of the escrow required by Summit County. He and Monson then planned to utilize the money obtained from lot sales to cover the cost of improvements. In this way, no out-of-pocket expenditures would be required of either partner. To aid in the initial financing of the Monson-Badger partnership, the district court found that Badger induced Bennett to lend the partnership an additional $50,000 by offering to secure the entire $131,000 loan plus interest with contracts for sale of the Park City lots. The district court found that the $50,000 received by

Monson and Badger was used in the development of the subdivision.

Based on the foregoing, the district court found that the Bitner Company-Westcor joint venture did comprehend financing the installation of improvements and the related fraudulent assignment of contracts to Bennett. The facts can be viewed as supporting this conclusion. Certainly the parties had a mutual interest in the sale of Park City lots. Either they would split the proceeds or Westcor would assign contracts of sale to Bitner Company. The agreement permitting Westcor to assign contracts to Bitner Company shows that by so doing, Westcor was acting with express authority and in the ordinary course of the joint venture's business. With respect to the Bennett assignment, of course, Westcor assigned contracts to a third party rather than to Bitner Company. Still, assigning contracts for sale is a common method of real estate financing.

Considering Westcor's express authority to sell Park City lots and the district court's finding that Westcor had financial responsibility for installing improvements, it was not clear error to find that the assignment of contracts to third parties for the purpose of financing the subdivision improvements qualified as conduct in the ordinary course of the venture's business.[1] Although Monson and Badger clearly had their own agenda as to how they could profit from the Bitner Company-Westcor venture without expending any out-of-pocket sums, the district court could have concluded that the relationship between Monson and Badger did not limit or interfere with the joint venture between Bitner Company and Westcor and that their relationship was in the nature of a subpartnership.

A subpartnership is a so-called partnership formed between a member of a partnership and a third person for a division of the profits coming to him from the partnership enterprise, by an agreement

---

**1.** I expressly disagree with the majority's rationale for finding that Monson acted in the ordinary course of business by assigning contracts to Bennett. Bitner Company's subsequent knowledge of Monson's fraudulent assignments of sales contracts to third parties and its agree-

ment to release Westcor for liability concerning the subdivision if the contracts were recovered do not have any relevance to the question whether the conduct should be considered to fall within the ordinary course of the venture's business.

of such a character as to disclose the essentials necessary to a partnership between the partner and the third person.... The subpartners are partners *inter se,* but a subpartner does not become a member of the partnership since there is no agreement between him and the other partners.... Consequently, a subpartner is not liable for the debts of the partnership. However, the subpartner may be held liable for debts which may be regarded as debts of the subpartnership.

59 Am. Jur. 2d *Partnership* § 16, at 941–42 (1971). In light of the district court's finding that the loan from Bennett was used to pay for improvements in the Park City subdivision, one of Westcor's express obligations under its joint venture agreement with Bitner Company, the burden to repay the debt justifiably may be placed on the joint venturers.

Finally, Bitner Company's lack of participation in or knowledge of the Bennett assignments does not negate its liability as a joint venturer. As the majority correctly points out, joint venturers stand in the same relationship to each other as partners, and the principles governing partners' liability also apply to joint venturers. Partnership law clearly requires that the partnership is liable for the wrongful acts of a partner acting in the ordinary course of the partnership business, even though the co-partners had no knowledge of the conduct and did not participate in it. Utah Code Ann. § 48-1-10 (1981); *see, e.g., Saikin v. New York Life Insurance Co.,* 45 Ill. App. 3d 1019, 4 Ill.Dec. 477, 360 N.E.2d 413 (Ill. App. Ct. 1977).

For these reasons, I join the majority in affirming the trial court's finding imposing joint and several liability upon Bitner Company for the damages Bennett suffered as a result of Monson and Badger's fraudulent assignment to him of sales contracts.